**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
| Plaintiff, | ) | 1:10-cv-1363 |
| | ) | |
| v. | ) | Judge Zagel |
| | ) | |
| IC SYSTEM, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | JURY DEMANDED |

**PLAINTIFF'S RESPONSE TO IC SYSTEM'S
RULE 56.1 STATEMENT OF MATERIAL FACT
AND
STATEMENT OF ADDITIONAL FACTS PRECLUDING
SUMMARY JUDGMENT IN FAVOR OF IC SYSTEM**

1. Plaintiff, Diego Frausto, is a resident of the Northern District of Illinois. (Plaintiff's Complaint, Docket # 1 ("DE#1") ¶ 4).

**RESPONSE**:     Admit.

2. IC is a debt collector with offices located in St. Paul, Minnesota. (Affidavit of Scott Elison at ¶ 2, attached as Exhibit 1).

**RESPONSE**:     Admit.

3. Frausto alleges that IC violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., when it tried to collect a debt he allegedly owed to PayPal, Inc. ("PayPal") (DE #1).

**RESPONSE**:     Admit

4. The Court has subject matter jurisdiction of this action under 15 U.S.C. § 1692k and 28 U.S.C. § 1331.

1

**II. Frausto's PayPal Account.**

5. On December 3, 2008, Frausto opened an account with PayPal by accessing PayPal's website and filling out an online registration form. (Deposition of Diego Frausto, attached as Exhibit 2, 16:2-20; Affidavit of Jamien Jordan, ¶ 2, attached as Exhibit 3).

**RESPONSE**:    Admit.

6. Frausto testified that he could not remember whether he gave PayPal his phone number, 224-595-7867, when he registered for his account. (Frausto Dep. 16:17-17:1). However, in his response to IC's discovery, he admitted that he gave PayPal the number. (Frausto's Discovery Responses, attached as Exhibit 4, Response to Request to Admit No. 4). Moreover, he testified that 224-595-7867 is the number he typically provides when a merchant asks him for a phone number. (Frausto Dep. 15:21-16:1).

**RESPONSE**:    Admit.    However, plaintiff's counsel withdrew the response to the request for admission before IC System filed its motion for summary judgment.  CITE:  email from A. Burke to P. Pederson

7. According to PayPal's records, on the registration form that Frausto completed, he typed his phone number (224-595-7867), name, email address, street address, and bank account information. He submitted this information to PayPal through its website. (Jordan Affidavit ¶ 3).

8. During the registration process, Frausto agreed to the PayPal User Agreement and Privacy Policy by clicking "accept" on the PayPal website. (Frausto Dep. 17:2-22).

**RESPONSE**:    Admit.

9. The PayPal User Agreement was displayed in Frausto's web browser window. PayPal's website asked Frausto to indicate whether or not he accepted the terms of the User Agreement, including the PayPal Privacy Policy that was hyperlinked to within the User Agreement. Frausto clicked the button on the web page which indicated he accepted the terms of the User Agreement. If Frausto had not accepted the terms of the User Agreement, PayPal's website would not have allowed him to register for an account. (Jordan Affidavit ¶ 4).

**RESPONSE**:      Admit.

10. The User Agreement and Privacy Policy that Frausto agreed to are authenticated in the attached Affidavit of Jamien Jordan, Senior Manager of Global Collections at PayPal. (Jordan Affidavit ¶ 4).

**RESPONSE**:      Admit.

11. The User Agreement contains the following provision:

1.10 Calls to You. By Providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.

(Exhibit A to Jordan Affidavit).

**RESPONSE**:      Admit.

12. The User Agreement further provides that:

1.2 Your Privacy. Protecting your privacy is very important to PayPal. Please review our Privacy Policy in order to better understand our commitment to maintaining your privacy, as well as our use and disclosure of your Information.

**RESPONSE**:      Admit.

13. The words "Privacy Policy" in § 1.2 of the User Agreement were hyperlinked to the Privacy Policy that applied to Frausto's account. (Jordan Affidavit ¶ 6).

**RESPONSE**:    Admit.

14. The Privacy Policy provides that, "This policy describes the way we collect, store, use and protect your personal information. You accepted this policy when you signed up for our Service." (Exhibit B to Jordan Affidavit p. 1).

**RESPONSE**:    Admit.

15. The Privacy Policy provides that:

If you open an account, we collect the following types of information from you:

• Contact information – your name, address, phone, email, Skype ID and other similar information

(Ex. B to Jordan Affidavit p. 2).

**RESPONSE**:    Admit.

16. The Privacy Policy defines the term "personal information" as "information that can be associated with a specific person and can be used to identify that person." (Ex. B to Jordan Affidavit p. 2).

**RESPONSE**:    Admit.

17. The Privacy Policy states that PayPal may use a customer's personal information

to:

• resolve disputes, collect fees, and troubleshoot problems;
• prevent potentially prohibited or illegal activities, and enforce our User Agreement.

(Ex. B to Jordan Affidavit p. 3).

18. Under the heading "How we share personal information with other parties," the Privacy Policy states that PayPal may share a customer's personal information with:

• Service providers under contract who help with parts of our business operations; (fraud prevention, bill collection, marketing, technology services). Our contracts dictate

that these service providers only use your information in connection with the services they perform for us and not for their own benefit.

(Ex. B to Jordan Affidavit p. 3).

**RESPONSE**:     Admit.

### III. Frausto's Debt to PayPal

19. In May 2009, Frausto sold a handbag to a third party on eBay.com, the auction and shopping website. (Frausto Dep. 22:6-10). The buyer's payment was processed through PayPal and the payment amount (net of PayPal's fees) was transferred to Frausto's PayPal account. (Id. at 25:1-9; Jordan Affidavit ¶ 8).

**RESPONSE**:     Admit.

20. The buyer claimed that the handbag was shipped to him in damaged condition and requested a refund. (Id. at 23:13-24). Frausto offered to provide the buyer with a refund of the purchase price, minus a 20% restocking fee. (Id.). Frausto sent the buyer an email, stating that:

There was absolutely nothing "used" about it. It was new. Now that we have established that, let me remind you that I specified no returns on ebay. But since I do understand that sometimes as irrational and impulsive consumers we are [sic] make purchases that we later regret, I can offer you a refund with a 20% restocking fee with shipping payed [sic] by you.

(See June 5, 2009 email in Frausto's Document Production, portions of which are attached as Exhibit 5. The June 5, 2009 email was not Bates stamped.)

**RESPONSE**:     Admit.

21. The buyer refused the refund and filed a dispute with PayPal. (Frausto Dep. 24:2- 9; Jordan Affidavit ¶ 9).

**RESPONSE**:     Admit.

22. On July 24, 2009, PayPal sent Frausto an email stating that:

> After careful consideration of the evidence provided in the case detailed below, we have completed our investigation and decided in favor of the buyer. Under the terms of our User Agreement, we have debited the following amount from your PayPal account as a refund to the buyer: $254.41 USD.

(Ex. 5 Frausto 16).

**RESPONSE**:     Admit.

23. The email referenced a transaction amount of "$254.41 USD," which was the amount that the buyer had paid for the handbag, and a refund amount of "$243.00 USD," which was the purchase price less PayPal's fees. (Ex. 5 Frausto 16; Jordan Affidavit ¶ 10).

**RESPONSE**:     Admit.

24. In another email sent on July 24, 2009, PayPal notified Frausto that:

> A refund has been initiated from your account and the case is now closed. Unfortunately, due to insufficient funds your account balance is now negative and may be limited. Any funds entering the account will apply toward making a positive balance.

(Ex. 5 Frausto 15; Jordan Affidavit ¶ 11).

**RESPONSE**:     Admit.

25. Frausto acknowledged that PayPal debited his account, creating a negative balance. (Frausto Dep. 27:24-28:11). Frausto claimed that he did not owe PayPal money because the handbag was returned to him in damaged condition, and when he listed the handbag on eBay he had not checked a box indicating that he would accept returns. (Frausto Dep. 23:20-24:9).

**RESPONSE**:     Admit.

26. When PayPal debited Frausto's account $254.41, the account had a zero balance. The debit reduced his account balance to negative $254.41. Under the terms of the User Agreement, Frausto became indebted to PayPal in the amount of the negative balance. (Jordan Affidavit ¶ 12).

**RESPONSE**:     Admit.

**IV. IC's Efforts to Collect Frausto's Debt**

27. IC and PayPal have entered into a contract under which IC collects debts that are owed to PayPal. (Jordan Affidavit ¶ 13; Elison Affidavit ¶ 3).

**RESPONSE**:     Admitted for purposes of this motion.  However, plaintiff notes that the affidavits cited do not attach any contract, and reference thereto is therefore hearsay.

28. PayPal asked IC to collect Frausto's debt and provided IC with Frausto's contact information, including the phone number which Frausto gave PayPal when he registered for his account. (Jordan Affidavit ¶ 14; Elison Affidavit ¶ 5).

**RESPONSE**:     Admitted for purposes of this motion.  However, plaintiff notes that the affidavits cited do not attach any contract, and reference thereto is therefore hearsay.

29. PayPal obtains the telephone numbers of its customers only from the customers themselves, and not from third parties such as skip tracers. (Jordan Affidavit ¶ 15).

**RESPONSE**:     Admit.

30. In connection with the collection services IC performs for PayPal, PayPal only provides IC with phone numbers that have been voluntarily provided to PayPal by the debtors themselves. (Jordan Affidavit ¶ 16).

**RESPONSE**:     Admit.

31. In August 2009 and September 2009, IC tried to collect Frausto's debt to PayPal by sending him a collection letter and placing collection calls to the phone number PayPal provided (224-595-7867). (Elison Affidavit ¶ 6).

**RESPONSE**:     Admit.

32. The only number IC ever called Frausto at was the number he had given to PayPal. (Frausto

Dep. 34:10-17; Elison Affidavit ¶ 7).

      **RESPONSE**:    Admit.


        Respectfully submitted,

        /s/Alexander H. Burke


**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
| Plaintiff, | ) | 1:10-cv-1363 |
| | ) | |
| v. | ) | Judge Zagel |
| | ) | |
| IC SYSTEM, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | JURY DEMANDED |

**PLAINTIFF'S LOCAL RULE 56.1 STATEMENT OF**
**ADDITIONAL FACTS THAT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF ICS**

*Citations to Exhibit letters herein refer to the appendix of exhibits filed along with plaintiff's motion for summary judgment.

1. **IC System, Inc. is not an affiliate or subsidiary of PayPal, Inc.**

This allegation is based upon a lack of evidence.

2. **The dialers ICS used to call plaintiff were located in Minnesota.**

Exhibit G, Answer to Second Amended Complaint ¶ 9; Exhibit A, ICS Discovery Responses at

Interrogatory 1.

3. **ICS never obtains consent on the phone through a live contact before playing a**

   **prerecorded message.**

Exhibit C, Deposition of Scott Ellison, at 12:7-13.

4. **Although it used prerecorded messages for calls to plaintiff at least three times, ICS**

   **never spoke with plaintiff, personally, in any telephone call.**

Exhibit D, Plaintiff Deposition 33:10-13.  Exhibit E, email from counsel regarding how many

prerecorded messages ICS left for plaintiff.

5. **ICS' dialer works like this: a computer query is made from a database of debts at ICS.**

Exhibit C at 8.

6. **The results of the query are automatically uploaded into the dialers, and the dialer automatically calls the phone numbers associated with those accounts.**

Exhibit C at 8.

7. **The dialers either decide on their own the order in which to call the phone numbers, which is the default, or can be programmed to make the calls in a specific order.**

Exhibit C at 9.

8. **The dialers are intelligent in the sense that they know to never make a phone call outside "legal calling times."**

Exhibit C at 8.

9. **Sometimes, ICS' dialers will call debtors twice in a day as part of a dialing campaign.**

Exhibit C at 14-15.

10. **If a dialer connects to a live person, it will either play a prerecorded message, or attempt to connect the call to an ICS collection employee, although sometimes the dialer cannot find an available agent, in which case it plays a prerecorded voice message.**

Exhibit C at 11.

11. **ICS is registered as a Minnesota debt collection agency.**

Exhibit G, excerpt from the Minnesota Department of Commerce's online license search website.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com