IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIEGO FRAUSTO, ) | |
|     Plaintiff, ) | 1:10-cv-1363 |
| ) | |
|     v. ) | Judge Zagel |
| ) | |
| IC SYSTEM, INC., ) | |
|     Defendant. ) | |
| ) | |
| ) | JURY DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO IC SYSTEM'S**
**MOTION FOR SUMMARY JUDGMENT**

The TCPA prohibits calling anyone on their cellular telephone, unless the caller can prove a "prior express consent" affirmative defense. 47 U.S.C. §227(b)(1)(A)(iii). Plaintiff and PayPal agreed ahead of time who was permitted to call plaintiff using an autodialer and prerecorded message: PayPal, its affiliates and subsidiaries, only. The contract states:

> 1.10 Calls to You. By Providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.
> ****
>
> "PayPal," "we," "us" or "our" means PayPal, Inc. and its subsidiaries and affiliates."

IC System ("ICS"), an unaffiliated third party debt collection agency, was not included in this unequivocal and finite delineation of rights, and therefore did not have consent to call plaintiff using the regulated equipment.

There is another reason why IC System did not have consent to call plaintiff's cell phone. The Minnesota Collection Agencies Act, Minn. Stat. §332.37(13), prohibits debt collection agencies from communicating with debtors by use of an autodialer and prerecorded message

1

unless the collection agency obtains the consent of the recipient for each call, *during each individual call*, to receive a prerecorded message:

> No collection agency or collector shall:
> \*\*\*\*
> communicate with a debtor by use of a recorded message utilizing an automatic dialing announcing device unless the recorded message is immediately preceded by <u>a live operator who</u> discloses prior to the message the name of the collection agency and the fact the message intends to solicit payment and the operator <u>obtains the consent of the debtor to hearing the message</u>

Emphasis added. ICS never obtains the oral consent of call recipients before it plays a prerecorded message. Thus, even if the contract between plaintiff and PayPal provided consent for ICS to call plaintiff using an autodialer, which it did not, ICS still did not have valid consent to use prerecorded messages in calls to plaintiff because it did not comply with §332.37(13).

I. **Facts.**

Plaintiff entered into a contract with PayPal, whereby only PayPal, its affiliates and subsidiaries have consent to call plaintiff using an automatic telephone dialing system and prerecorded or artificial voice message. IC System Statement of Material Fact ("ICF") ¶11. ICS is not an affiliate or subsidiary of PayPal. Plaintiff's Statement of Additional Facts ("PMF") ¶1. ICS is licensed by the State of Minnesota as a debt collection agency. PMF ¶11.

ICS is located in Minnesota, and its dialers are located in Minnesota. ICF ¶2. ICS never obtains the oral consent of a debtor during an autodialed phone call before leaving a prerecorded message. PMF ¶3. ICS left at least three prerecorded messages for plaintiff, but no ICS employee ever spoke with plaintiff, personally. PMF ¶4.

ICS' dialers are fully automated. A computer query is performed by an ICS employee, which creates a list of telephone numbers. PMF ¶5. The result of the query is automatically uploaded into the dialers, and the dialers automatically dial those phone numbers. PMF ¶6.

The dialers either decide on their own in what order in which to call the phone numbers, which is the default, or an ICS employee can also program the dialers to call the numbers in a preselected order or fashion. PMF ¶7. The dialers decide when to call debtors. For example, the dialers are specifically programmed never to call a debtor outside legal calling times. PMF ¶8. Unless someone at ICS specifically programs the dialer to do a calling campaign in a particular order or at a particular time, the dialer selects what phone number to call when, and in what order. PMF ¶¶ 7, 8. Furthermore, sometimes the dialers will call a particular telephone number twice as part of the same calling campaign. PMF ¶9.

If ICS' dialers connect with a debtor, then they either automatically play a prerecorded message, or they attempt to connect the debtor to a human-being collection agent. PMF ¶10.

**II. The Prior Express Consent Defense.**

The TCPA, section 227(b) permits only one defense to liability: prior express consent. *See Powell v. West Asset Management, Inc.*, 2011 WL 1126040 (N.D.Ill. Mar. 24, 2011). It is the "prior express consent" defense that provides the entire basis for ICS' summary judgment motion. The TCPA, 47 U.S.C. §227(b)(1)(A)(iii), reads:

> (1) It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
>
> > (A) to make any call (other than a call made for emergency purposes or made with the <u>prior express consent</u> of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
> > ***

3

> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call. 47 U.S.C. § 227(b)(1)(A).

Prior express consent is an affirmative defense. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act*, CG 02-278 (Jan. 4, 2008)[1] ("*In re TCPA*") at ¶10; *Hicks v. Client Services, Inc.*, 2009 WL 2365637, at *4-5 (S.D.Fla. June 9, 2009); *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, at *6 (N.D.Ill. May 5, 2010), *reconsideration denied* June 17, 2010.

As the proponent of the "prior express consent" defense, IC System bears the burden of proof. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948). The burden of proof is "preponderance of the evidence." *New Jersey v. New York*, 523 U.S. 767, 786-87 (1998).

In *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270, at *6 (N.D.Ill. May 5, 2010), *reconsideration denied* June 17, 2010, this Court held that a debt collection agency that had a consumer's consent to use an autodialer and prerecorded messages *lost* those privileges by operation of law after receiving the consumer's dispute of the debt pursuant to the FDCPA, 15 U.S.C. §1692g. *Id*. at *4; see also, *In re TCPA*, at ¶10 (Jan. 4, 2008) ("instructions to the contrary" may operate to revoke or affect whether consent exists). The *Segenberger* Court reasoned that although the debtor's letter did not include any magic words, such as "I revoke consent for you to call my cell phone using an autodialer and prerecorded message," the fact

---

[1] Because of the Hobbs Act, 28 U.S.C. § 2342, the Court must treat valid FCC final orders as the Law of the Land. *CE Design, Ltd. v. Prism Business Media, Inc.*. 606 F.3d 443(7th Cir. 2010); *Gottlieb v. Carnival Corp,* 635 F.Supp 2d 213 (2009).

that the debtor disputed the debt triggered the FDCPA's prohibition on calling the debtor, which constituted a valid revocation of consent.

Here, ICS is not entitled to the defense for two distinct reasons. First, plaintiff and the creditor PayPal expressly agreed about who had consent to use an autodialer, and ICS was not included. Second, similarly to *Sengenberger*, Minnesota's law validly restricted the type of consent necessary for Minnesota-licensed debt collectors to obtain to use an autodialer and prerecorded message, and ICS did not have consent because it did not comply. ICS' motion for summary judgment should be denied.

### A. PayPal's Contract is Specific that only Paypal has the Right to Use the Proscribed Equipment.

PayPal's contract was specific that PayPal – and only PayPal and companies under common ownership and control – had consent to call plaintiff's cellular telephone using an autodialer or prerecorded message. The contract states:

> 1.10 Calls to You. By Providing PayPal a telephone number (including a wireless/cellular telephone), you consent to receiving autodialed and prerecorded message calls from PayPal at that number.

Exhibit A to PayPal Affidavit at pg. 3 of 37. In other words, PayPal and plaintiff <u>agreed</u> that only PayPal would have the right to contact plaintiff on his cellular telephone.

The contract states that "Some capitalized terms have specific definitions, and we have provided them in section 15." One of the "specific definitions" this sentence refers to is "PayPal." The contract's definition of PayPal is:

> "PayPal," "we," "us" or "our" means PayPal, Inc. and its subsidiaries and affiliates."

<u>Exhibit A</u> to PayPal Affidavit ¶ 15(ad), at pg. 35 of 37. IC System is not an affiliate or subsidiary of PayPal. PMF ¶1.

5

There is no mention of ICS, debt collection agencies or other third parties. The contract is not ambiguous: it unequivocally gives Paypal and its affiliates and subsidiaries exclusive consent to call Frausto using an autodialer and/or prerecorded message. The familiar statutory cannon *expressio unius est exclusion alterius* applies: "if a statute specifies one exception to a general rule or assumes to specify the effects of a certain provision, other exceptions or effects are excluded." Black's Law Dictionary (6th ed. 1990); *In re Globe Bldg. Materials, Inc.*, 463 F.3d 631 (7th Cir. 2006).

If the contract were ambiguous, the tie should go to Frausto: the general rule is that ambiguous contracts should be construed against the drafter, *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 341 Ill.App.3d 14, 18, 792 N.E.2d 1 (2003), *aff'd*, 213 Ill.2d 58, 289 Ill.Dec. 635, 820 N.E.2d 411 (2004), see also Cal.Civ.Code §1654, and contracts of adhesion should be construed in favor of the weaker party. *Transamerica Ins. Co. v. South*, 975 F.2d 321 (7th Cir. 1992); see also ICF ¶9, admitting that the contract was of the "take it or leave it" variety.

ICS is not a subsidiary or affiliate of PayPal. "Subsidiary" and "affiliate" are terms of art, and were construed by the Ninth Circuit in an analogous TCPA "junk" text message case, *Satterfield v. Simon & Schuster*, 569 F.3d 946, 954 (9th Cir. 2009). That Court held that affiliate and subsidiary did not apply to third parties that did not have common ownership with the book publishing company:

> The term "affiliate" carries its own, independent legal significance. "Affiliate refers to a 'corporation that is related to another corporation by shareholdings or other means of control....' " *Delaware Ins. Guar. Ass'n v. Christiana Care Health Servs., Inc.*, 892 A.2d 1073, 1077 (Del.2006) (quoting Black's Law Dictionary 59 (7th ed.1999)).
>
> The plain and ordinary meaning of 'affiliate' supports this definition as 'a company effectively controlled by another or associated with others under common ownership or control.' Webster's Third New International Dictionary 35 (2002).

*Satterfield* at 955 (paragraph break supplied). Similarly here, IC System does not have common ownership or control as to Paypal.

IC System's citation to provisions in PayPal's "privacy policy" permitting PayPal to share plaintiff's phone number with debt collectors is of no moment. The policy does not mention autodialers or prerecorded or artificial voice messages at all. And whether ICS was permitted to *share* telephone numbers or other information with debt collection agencies is not at issue in this case. Plaintiff does not dispute that ICS was entitled to know his phone number; nor does he contest whether a human being at ICS could have permissibly hand-dialed his cell phone number in attempts to collect the alleged debt. What matters here is that pursuant to plaintiff's agreement with Paypal, ICS was not permitted to use the proscribed equipment.

In sum, plaintiff and PayPal agreed that PayPal had consent to use an autodialer, to the exclusion of any others. ICS never had plaintiff's consent, and its summary judgment motion should be denied.

  **B. ICS did not have Plaintiff's Consent because Minnesota's Collection Agencies Act Permissibly Restricted Consent, and ICS did not Comply.**

Additionally, ICS did not have plaintiff's "prior express consent" as to any calls where ICS used an autodialer and a prerecorded message, because ICS did not comply with Minn.Stat. § 332.37(13).

Congress made it clear that it wanted states to be able to regulate the level of consent required for autodialer and prerecorded message calls, as long as such regulations are more stringent and consumer friendly the TCPA. 47 U.S.C. §227(e) states:

  (e) Effect on State law

> (1) State law not preempted
>
> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—
>
>> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>>
>> (B) the use of automatic telephone dialing systems;
>>
>> (C) the use of artificial or prerecorded voice messages; or
>>
>> (D) the making of telephone solicitations.

The Minnesota Collection Agencies Act, Minn. Stat. §332.37(13), prohibits debt collection agencies from communicating with debtors by use of an autodialer and prerecorded message unless the collection agency obtains the oral consent of the recipient for each call, *during the call*, to receive a prerecorded message:

> No collection agency or collector shall:
> \*\*\*\*
> communicate with a debtor by use of a recorded message utilizing an automatic dialing announcing device unless the recorded message is immediately preceded by a live operator who discloses prior to the message the name of the collection agency and the fact the message intends to solicit payment and the operator <u>obtains the consent of the debtor to hearing the message</u>.

It is undisputed that ICS does not comply with this consent requirement, and there is no dispute that Minnesota laws apply to ICS: a St. Paul-based, Minnesota-licensed debt collection agency. PMF ¶ 3. The only issue is whether ICS' dialers are ADADs pursuant to Minnesota law. They are.

Although not part of the Minnesota Collection Agencies Act, the Minnesota legislature defined ADADs in Minn. Stat. § 325E.26 as such:

> Automatic dialing-announcing device" means a device that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called.

8

ICSs dialers fit squarely within this definition. ICS' computers do a query of debt collection accounts that ICS wants to call. The list of accounts, and phone numbers, is then automatically uploaded into the dialer. Unless someone at ICS specifically programs the dialer to call in a particular order or at a particular time, the dialer selects what phone number to call when, and in what order. When calls are answered, the dialer then plays a prerecorded message, or the call is routed to a live collection agent.

> The Minnesota Supreme Court equated its ADAD definition to the TCPA's definition:
>
> Minnesota is hardly alone in voicing concern over the proliferation of ADADs. The federal government and over 40 states have enacted legislation limiting the use of ADADs. S.Rep. No. 178, 102d Cong., 1st Sess. 3 (1991), U.S.Code Cong. & Admin.News 1991, pp. 1968, 1970.
>
> The authors of the federal statute which regulates use of ADADs-the Telephone Consumer Protection Act of 1991 (effective December 20, 1992)-chose not to limit its regulatory scope to commercial speech, but rather, among other things, banned all computer generated calls to homes unless such a call is made for emergency purposes or the subscriber consents in advance to it. 47 U.S.C.A. § 227(b)(1)(B)….
>
> The [TCPA] does not preempt state ADAD regulations. 47 U.S.C.A. § 227(e)(1).

*State ex rel Humphrey v. Casino Marketing Group, Inc*., 491 N.W.2d 882, fn.3 (Minn. 1992) (paragraph breaks supplied).

> The Eighth Circuit explained what an ADAD is for purposes of Minn.Stat. §325E.26 this way:
>
> These machines can dial telephone numbers either according to a pattern ( e.g., consecutive or random numbers) or as programmed, and, when the telephone is answered, deliver a recorded message.

*Van Bergen v. Minnesota*, 59 F.3d 1541, 1545 (8th Cir. 1995).

9

There is no question of fact as to whether ICS' dialers select telephone numbers by computer program and dial those numbers. If the dialer gets a busy signal, it hangs up and tries the next number. If ICS' dialer connects with a live person, then it plays a prerecorded message. Sometimes, ICS' dialer will even call debtors twice in a day as part of a dialing campaign. *State ex rel Humphrey v. Casino Marketing Group, Inc.*, 491 N.W.2d 882, 884 (Minn. 1992).

Because ICS was using an ADAD, and did not comply with the Minnesota Collection Agencies Act's strict consent requirements for such calls, there was no consent for any such call where a prerecorded message was used, as a matter of law.

**CONCLUSION**

For the forgoing reasons, ICS' motion for summary judgment should be denied.

Respectfully submitted,

/s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com