**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
|         Plaintiff, | ) | |
| v. | ) | Case No. 10-cv-1363 |
| | ) | |
| IC SYSTEM, INC., | ) | Judge Zagel |
|         Defendant. | ) | |

**DEFENDANT IC SYSTEM, INC.'S RESPONSE TO PLAINTIFF'S RULE 56.1
STATEMENT OF ADDITIONAL FACTS**

Defendant IC SYSTEM, INC. ("IC"), submits this Response to Plaintiff's Rule 56.1 Statement of Additional Facts:

**1. IC System, Inc. is not an affiliate or subsidiary of PayPal, Inc.**

This allegation is based upon a lack of evidence.

**RESPONSE:** IC denies this unsupported allegation because plaintiff does not define "affiliate." IC admits that it is not a subsidiary of PayPal, Inc. In further answering, IC admits that that IC and Paypal, Inc. entered into a contract under which IC collects debts owed to Paypal. (Jordan Affidavit ¶ 13; Ellison Affidavit ¶ 3).

**2. The dialers ICS used to call plaintiff were located in Minnesota.**

Exhibit G, Answer to Second Amended Complaint ¶ 9; Exhibit A,
ICS Discovery Responses at Interrogatory 1.

**RESPONSE:** IC admits that it used an "Avaya dialer" located in St. Paul, Minnesota, to call plaintiff. (Answer to Second Amended Complaint ¶ 9, ICS Answers to Plaintiff's First Set of Interrogatories, at No. 1). IC also has call centers in North Dakota, Wisconsin, and Iowa, and it uses dialer services located in Utah and California.

**3. ICS never obtains consent on the phone through a live contact before playing a prerecorded message.**

Exhibit C, Deposition of Scott Ellison, at 12:7 ‑ 13.

**RESPONSE:** IC denies this allegation because the evidence cited by Plaintiff does not support the allegation. (Deposition of Scott Elison, at 12:7‑13). IC admits that plaintiff consented to receiving prerecorded messages because plaintiff had given his creditor, PayPal, the telephone number that IC called. (Elison Affidavit ¶ 4). IC further notes that the statement of additional facts and the transcript of Elison's deposition incorrectly spell his name with two letter l's.

4.  **Although it used prerecorded messages for calls to plaintiff at least three times, ICS never spoke with plaintiff, personally, in any telephone call.**

    Exhibit D, Plaintiff Deposition 33:10‑13. Exhibit E, email from counsel regarding how many prerecorded messages ICS left for plaintiff.

**RESPONSE:** Denied. Plaintiff testified that on one occasion when IC called him, he had a conversation with a live representative of IC. (Plaintiff Dep., Docket # 43-3, at 30:23-31:18). On the other occasions that IC called plaintiff, plaintiff recognized IC as the caller and did not answer the phone. (Plaintiff deposition at 33:13-33:18). IC denies that Plaintiff testified he received three prerecorded messages from IC. (Plaintiff deposition at 33:23-34:9).

5.  **ICS' dialer works like this: a computer query is made from a database of debts at ICS.**

    Exhibit C at 8.

**RESPONSE:** Denied. Elison testified that human beings employed by IC are responsible for selecting every phone number that IC calls by means of its dialing system, and that for most dialing campaigns a human being has specified the order in which the phone numbers included in the campaign should be called. (Elison Dep. at 17:5-18:13). (Elison Dep. at 17:5-18:13). Excerpts from Elison's testimony are quoted below:

> Q. Mr. Ellison, earlier you testified that in some campaigns the dialer will decide the order in which the phone numbers included in the campaign are dialed; is that correct?

2

A. Yes.

Q. How often does an IC employee control the order in which the numbers included in the campaign are called?

A. It's typical for us to do that. A very high percentage of the campaigns do have a – the sort set to a certain value that operations may want.

Q. In the case of a campaign where the dialer is selecting the order in which the numbers are called, is it true that a human being employed by IC System will still be responsible for deciding what numbers are included in that campaign in the first place?

A. Yes. This is within a campaign that I'm referring to, as far as how the numbers are dialed or the order in which the accounts are dialed.

Q. Does a human being employed by IC set the criteria for selecting the numbers that are included in a dialing campaign in the case of all of the company's dialing campaigns?

A. Yes.

(Elison Dep. at 17:5-18:13).

IC admits that, once a human being has identified the numbers to be included in a dialing campaign, the numbers are downloaded from its database to the dialing system. (Ellison deposition at 8:2-8:7).

6. **The results of the query are automatically uploaded into the dialers, and the dialer automatically calls the phone numbers associated with those accounts.**

Exhibit C at 8.

**RESPONSE:** Denied. Elison testified that human beings employed by IC are responsible for selecting every phone number that IC calls by means of its dialing system, and that for most dialing campaigns a human being has specified the order in which the phone numbers included in the campaign should be called. (Elison Dep. at 17:5-18:13). See response to ¶ 5.

7. **The dialers either decide on their own the order in which to call the phone numbers, which is the default, or can be programmed to make the calls in a specific order.**

Exhibit C at 9.

3

**RESPONSE:** Denied. Elison testified that human beings employed by IC are responsible for selecting every phone number that IC calls by means of its dialing system, and that for most dialing campaigns a human being has specified the order in which the phone numbers included in the campaign should be called. (Elison Dep. at 17:5-18:13). See response to ¶ 5.

8. **The dialers are intelligent in the sense that they know to never make a phone call outside "legal calling times."**

   Exhibit C at 8.

**RESPONSE:** IC admits that the dialer is programmed so that phone numbers are only called at times when it is legal to make a collection call to the number. (Ellison deposition at 9:14-9:16).

9. **Sometimes, ICS' dialers will call debtors twice in a day as part of a dialing campaign.**

   Exhibit C at 14 ‑ 15.

**RESPONSE:** Denied as the cited evidence does not support this allegation. Elison testified its dialing system could call a particular number twice as part of a dialing campaign, not twice on the same day. (Deposition of Scott Ellison, at 15:14-15:21).

10. **If a dialer connects to a live person, it will either play a prerecorded message, or attempt to connect the call to an ICS collection employee, although sometimes the dialer cannot find an available agent, in which case it plays a prerecorded voice message.**

    Exhibit C at 11.

**RESPONSE:** Denied as the cited testimony does not support this allegation. Elison testified that IC runs two dialing campaigns: one in which it leaves automated messages for debtors, and one in which live operators are available to handle calls when a debtor answers. (Deposition of Scott Ellison, at 11:18-12:13). IC does not leave automated messages in live operator campaigns. (Deposition of Scott Ellison, at 12:7-13).

11. **ICS is registered as a Minnesota debt collection agency.**

4

   Exhibit G, excerpt from the Minnesota Department of Commerce's online license search website.

**RESPONSE:** Admitted.

               **Respectfully submitted:**

               **IC SYSTEM, INC.**

               By: /s/ Peter E. Pederson
                  One of its Attorneys

               David M. Schultz
               Peter E. Pederson
               Avanti D. Bakane
               HINSHAW & CULBERTSON LLP
               222 N. LaSalle Street, Suite 300
               Chicago, Illinois 60601
               (312) 704-3000
               Fax: (312) 704-3001
               dschultz@hinshawlaw.com
               ppederson@hinshawlaw.com
               abakane@hinshawlaw.com

## **CERTIFICATE OF SERVICE**

  The undersigned attorney certifies that on May 6, 2011, I served this document by filing it with the Court's CM/ECF system, which will make copies of the documents available to the following counsel of record.

Alexander H. Burke, Esq.
ABurke@BurkeLawLLC.com
BURKE LAW OFFICES, LLC
155 N. Michigan Avenue, Suite 9020
**Chicago, Illinois 60601**

                         /s/ Avanti D. Bakane