**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DIEGO FRAUSTO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 10-cv-1363 |
| v. ) | |
| ) | Judge Zagel |
| **IC SYSTEM, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>IC'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT</u>

### I. ARGUMENT

In his response to IC System, Inc.'s ("IC"), motion for summary judgment, plaintiff, Diego Frausto, makes two arguments to support his claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. First, he argues that he did not consent to receive auto-dialed[1] calls made by IC because his agreement with PayPal, Inc. ("PayPal") explicitly stated that he consented to receive calls made by PayPal, but it did not explicitly state that he consented to receive calls made by IC, PayPal's debt collector. This argument, however, is contrary to the Federal Communications Commission's ("FCC") regulations, which provide that a debtor consents to receive a debt collector's phone call when he provides his phone number to the creditor. Frausto admittedly took that action. Second, perhaps recognizing that he consented to receive IC's calls under the terms of the FCC orders, Frausto argues that the calls nonetheless violate the TCPA because he did not consent to the calls for purposes of the Minnesota Collection Agencies Act. The Minnesota act, however, has no bearing on Frausto's TCPA claim because the TCPA does not provide a private right of action for alleged violations of state law.

---

[1] In this brief, the phrase "auto-dialed calls" means calls allegedly made using an automatic telephone dialing system or an artificial or pre-recorded voice.

And Frausto cannot, in any case, invoke Minnesota law because he is an Illinois resident, and his claim has no connection to Minnesota.

> A. **Frausto consented to receive auto-dialed calls from IC by releasing his phone number to PayPal.**

Under controlling regulations adopted by the FCC,[2] "prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9 (the "2008 Order"). The "provision of a cell phone number to a creditor [constitutes] prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." 2008 Order ¶ 9. "Calls by a third party collector on behalf of [the] creditor are treated as if the creditor itself placed the call." 2008 Order ¶ 10. "[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) (the "1992 Order").

It is undisputed that IC called Frausto at the phone number that he gave to PayPal in connection with the debt that IC was trying to collect. (Frausto's Response to IC's Local Rule 56.1 Statement, Docket # 39, ¶¶ 6, 7, 32). Hence, the FCC's regulations compel the conclusion that Frausto consented to receive IC's calls, and the calls comply with the TCPA. In the face of this clear regulatory authority, Frausto argues that he did not consent to IC's calls because the PayPal User Agreement did not explicitly state that he consented to receive auto-dialed calls

---

[2] A district court must accept the FCC's interpretation of the TCPA as expressed in its regulations and orders. *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010).

130094138v1 0910619 71482

made by IC to his cell phone. (Docket # 40 at 5-7). Frausto's argument lacks merit for two independent reasons.

First, the 2008 Order states that calls made by a debt collector are deemed to be made by the creditor itself. 2008 Order ¶ 10. Thus, the calls IC placed to Frausto are deemed to have been placed by PayPal. Because they were made to a number that Frausto provided to PayPal, they were made with his consent. *Starkey v. Firstsource Advantage, LLC,* 2010 WL 2541756, *3 (W.D. N.Y. 2010) (auto-dialed calls that a debt collector made to the number that the debtor provided to the creditor complied with the TCPA); *Cunningham v. Credit Management, L.P.,* 2010 WL 3791104, *5 (N.D. Tex. 2010) (same).

Second, in the absence of "instructions to the contrary," persons who release their phone numbers have given an "invitation or permission" to be called at the number so released. 2008 Order ¶ 9 (quoting 1992 Order ¶ 31). The PayPal User Agreement and Privacy Policy contained no "instructions to the contrary" which directed PayPal or its debt collector not to call Frausto at the number he voluntarily released. On the contrary, the Privacy Policy actually stated that PayPal could share Frausto's phone number with a debt collector for the purpose of collecting bills and enforcing the PayPal Agreement. (*See* Privacy Policy, Docket # 43-4 at 43 (PayPal may share personal information with "[s]ervice providers under contract who help with … bill collection")). Frausto admits that, by accepting the Privacy Policy, he authorized PayPal to give IC his phone number. (Docket # 40 at 7 ("Plaintiff does not dispute that IC was entitled to know his number")).

Frausto contends that, although the Privacy Policy allowed PayPal to release his number to IC, it did not allow IC to place auto-dialed calls to his cell phone. (Docket # 40 at 7). This argument is flatly contrary to the FCC's orders. The 1992 Order states that persons who

3

knowingly release their phone numbers have given permission to be called at the number so released. 1992 Order ¶ 31. The 2008 Order states that, when a person gives a phone number to a creditor, he consents to receive auto-dialed calls at that number in connection with the debt. 2008 Order ¶ 9. Frausto therefore consented to receive auto-dialed calls on his cell phone in connection with his PayPal debt. The decision in *Greene v. DirecTV, Inc.*, 2010 WL 4628734, *3 (N.D. Ill. 2010) (Kocoras, J.), is on point. The plaintiff there consented to receive an auto-dialed call from a potential creditor's vendor by "providing Equifax with her cellular telephone number knowing that potential creditors would use it as the contact number for fraud alert notifications." Similarly, Frausto consented to receive auto-dialed calls from IC when he released his phone number to PayPal and authorized PayPal to release the number to its debt collector.

The case Frausto cites, *Sengenberger v. Credit Control Services, Inc.,* 2010 U.S. Dist. LEXIS 43874, *9-10 (N.D. Ill. 2010), is factually distinguishable. The debt collector there continued to make auto-dialed calls to the debtor's cell phone after the debtor sent the collector a letter instructing the collector to cease calling him. The letter had the effect of revoking the debtor's consent to be called on his cell phone or in any other way. Here, Frausto does not allege that he revoked consent to be called by IC. He alleges that he never consented to be called in the first place. Under the FCC regulations, however, he consented to be called by IC when he released his number to PayPal, and summary judgment should therefore be entered in IC's favor. *Starkey,* 2010 WL 2541756, at *3; *Cunningham,* 2010 WL 3791104, at *5.

  **B.**  **Frausto cannot invoke the Minnesota Collection Agency Act to rehabilitate his TCPA claim.**

Frausto argues that IC's calls violate the TCPA because IC allegedly failed to obtain his consent to hearing recorded messages, as was allegedly required under § 332.37(13) of the

4

Minnesota Collection Agencies Act ("MCAA"). § 332.37(13) states that a collection agency must not:

> communicate with a debtor by use of a recorded message utilizing an automatic dialing announcing device unless the recorded message is immediately preceded by a live operator who discloses prior to the message the name of the collection agency and the fact the message intends to solicit payment and the operator obtains the consent of the debtor to hearing the message;

Frausto's reliance on the MCAA is unavailing for two reasons. First, the TCPA provides a private right of action for violations of the TCPA and the FCC's regulations, but it does not provide a private right of action for purported violations of the MCAA or other state laws. The private right of action provision in the TCPA states:

> a person … may, if otherwise permitted by the laws or rules of court of a State, bring…
>
> (A) an action based on a violation of *this subsection or the regulations prescribed under this subsection* to enjoin such a violation,
>
> (B) an action to recover for actual monetary loss from *such a violation*, or to receive $500 in damages for *each such violation*, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3) (italics added). The plain language of the TCPA authorizes an action for violations of § 227(b) and the FCC's implementing regulations for § 227(b) (which are located at 47 C.F.R. § 64.1200). Because the TCPA does not provide a private right of action for violations of state law, Frausto could not recover damages under the TCPA even if he could show that IC violated § 332.37(13) of the MCAA.[3]

Frausto notes that under the TCPA's saving clause, the TCPA does not preempt any state law which imposes more restrictive intrastate requirements on, or which prohibits, "the use of

---

[3] Furthermore, § 227(b)(3) states that the private right of action is available only "if otherwise permitted by the laws … of a State." Frausto cannot maintain an action under the TCPA for an alleged violation of the MCAA because Minnesota law does not permit a private right of action for violations of the MCAA. *Edeh v. Midland Credit Management, Inc.,* 748 F.Supp.2d 1030, 1037-38 (D. Minn. 2010).

automatic telephone dialing systems." 47 U.S.C. § 227(e)(1)(B). Even if the saving clause applies to § 332.37(13), it would not follow the TCPA provides a private right of action for violations of the MCAA. As stated, § 227(b)(3) provides a right of action only for violations of § 227(b) and the regulations prescribed under that section. The saving clause is therefore irrelevant.

To the extent that Frausto argues that the MCAA governs whether he consented to receive IC's calls for purposes of the TCPA, his argument lacks merit. Whether a debtor consented to receive a call for purposes of § 227(b)(1)(A) of the TCPA is controlled not by state law, but by the TCPA and the detailed rules contained in the FCC's 1992 Order and 2008 Order. Frausto has not offered any basis to conclude that the Minnesota act governs whether a called party has consented to receive an auto-dialed call for purposes of the TCPA. The statutes are administered by different government agencies, and they regulate different fields of activity.[4] Because the MCAA does not govern whether consent was given for purposes of the TCPA, Frausto could not recover damages under TCPA even if he showed that IC failed to obtain his consent as required by the MCAA.[5]

Second, Frausto's attempt to rely on Minnesota law is unavailing because Frausto's TCPA claim has no connection to the State of Minnesota. Frausto is an Illinois resident. (Docket # 18 ¶ 5). The phone number that IC dialed to reach Frausto has an Illinois area code. (Frausto's Response to IC's Local Rule 56.1 Statement, Docket # 39, ¶¶ 1, 6). Frausto does not allege that

---

[4] The FCC enforces the TCPA (47 U.S.C. § 227(b)(2), 47 U.S.C. § 154(a)), while the Minnesota Commissioner of Commerce administers the MCAA. Minn. Stat. §§ 332.311, 332.44. The TCPA regulates telemarketing calls and the use of automated telephone equipment, while the MCAA regulates debt collection. *Compare* 2008 Order ¶ 2 *with* Minn. Stat. §§ 332.31 *et seq*.

[5] Frausto also incorrectly suggests that IC uses a fully automated dialing system which selects the phone numbers to be called and then calls them without any human involvement. (Docket # 40, at 3; Docket # 39 at 9-11). Scott Elison, IC's Federal Rule 30(b)(6) representative on the subject of its dialing system, testified that human beings employed by IC are responsible for selecting every phone number that IC calls by means of its dialing system, and that for most dialing campaigns a human being has specified the order in which the phone numbers included in the campaign should be called. (Elison Dep. at 17:5-18:13).

6

he was in Minnesota when IC called him, nor does he allege other facts that establish a connection between his claim and Minnesota. (Docket # 18).

Although IC is located in Minnesota, that fact, standing alone, is insufficient for Frausto to invoke Minnesota law. Minnesota has adopted "a general presumption that its statutes do not apply extraterritorially." *Capitol Records Inc. v. Thomas-Rasset,* 2009 WL 1664468, *2 (D. Minn. 2009). Applying this presumption, the Illinois supreme court held that the Consumer Fraud Act, 815 ILCS § 505/2, does not apply to allegedly "fraudulent transactions which take place outside Illinois," even when the defendant's principal place of business is located in this state and the defendant devised and disseminated the fraudulent scheme in this state. *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 853 (Ill. 2005); *see also Shaw v. Hyatt Intern. Corp.,* 2005 WL 3088438, *2 (N.D. Ill. 2005). The supreme court of Washington held that a claim under the Washington Consumer Protection Act may only be brought on behalf of people located within that state, even when the corporate defendant is based there and engaged in the disputed transaction there. *Schnall v. AT&T Wireless Services, Inc.,* 225 P.3d 929, 938-39 (Wash. 2010). Likewise, Frausto cannot invoke the MCAA to shore up his TCPA claim because he is not a Minnesota resident, the calls were made to an Illinois phone number, and he does not allege that he received the calls in Minnesota. For all these reasons, Frausto's arguments concerning the MCAA do not rehabilitate his claim under the TCPA.

## II.    CONCLUSION

WHEREFORE, Defendant, IC SYSTEM, INC., respectfully requests this Honorable Court enter summary judgment on the TCPA claim in favor of defendant, and against plaintiff.

Respectfully submitted

IC SYSTEM, INC.


By:   /s/ Peter E. Pederson
      One of its Attorneys

David M. Schultz
Peter E. Pederson
Avanti Bakane
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000
Fax: (312) 704-3001

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on May 6, 2011, he served this document by causing a copy to be electronically filed through the Court's CM/ECF system, which will make a copy available to counsel of record identified below.

/s/ Peter E. Pederson

**Service List**

Alexander H. Burke, Esq.
ABurke@BurkeLawLLC.com
BURKE LAW OFFICES, LLC
155 N. Michigan Avenue, Suite 9020
Chicago, Illinois 60601