**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
| Plaintiff, | ) | 1:10-cv-1363 |
| | ) | |
| v. | ) | Judge Zagel |
| | ) | |
| IC SYSTEM, INC., | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | JURY DEMANDED |

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF**
**ORDER GRANTING DEFENDANT'S SUMMARY JUDGMENT MOTION**

Plaintiff respectfully requests that this Court reconsider its order granting summary judgment for defendant because (1) the Court erred when it refused to consider one of plaintiff's responses to an affirmative defense, and (2) because of evidence plaintiff found after the summary judgment ruling that, if admitted, would likely change the outcome.  In support of this motion, plaintiff states:

The TCPA prohibits calling anyone on their cellular telephone, unless the caller can prove a "prior express consent" affirmative defense.  47 U.S.C. §227(b)(1)(A)(iii). On August 22, 2011, this Court entered a memorandum opinion and order granting defendant IC System, Inc.'s motion for summary judgment as to its "prior express consent" affirmative defense.  This motion is brought pursuant to Fed.R.Civ.P. 59 and 60(b).

Plaintiff respectfully requests that this Court reconsider part of that ruling because it erred as a matter of law that a plaintiff must plead the absence of an affirmative defense, and because new evidence has come to light, which, if considered by the Court, would likely alter

the outcome of the case. Plaintiff brings this motion pursuant to Fed.R.Civ.P. 59(b) & (e), or alternatively pursuant to Fed.R.Civ.P. 60(b).

First, the Court erred when it refused to consider plaintiff's Minnesota Collection Agencies Act argument, which was a response to ICS' "prior express consent" affirmative defense, because it was raised for the first time in response to ICS' motion for summary judgment. Exhibit 1, Opinion at fn. 2. However, a plaintiff has no duty to raise a response to an affirmative defense before summary judgment.

Second, a new document has come to light that was not previously disclosed. Exhibit 2 is a letter from the plaintiff to the creditor revoking consent to be called on his cellular telephone. Although both plaintiff and defendant apparently had access to this document, neither party produced it in discovery. Plaintiff respectfully requests that the Court reconsider its order granting summary judgment defendant in light of this document, because plaintiff diligently searched for all such documents both before this case was filed and during discovery, because the new evidence affects only some of the calls (thus the summary judgment order stands for the remainder of the case) and because the courts favor disposition of matters such as this on their merits.

I.  **STANDARD OF REVIEW**

Fed.R.Civ.P. 59 "[m]otions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Phipps v. Sheriff of Cook County*, 681 F.Supp.2d 899, 924 (N.D.Ill.2009) (quoting *Caisse Nationale de Credit Agricole v. CBI Industries, Inc.*, 90 F.3d 1264, 1269 (7th Cir.1996)). "[A] reconsideration motion is appropriate where: (1) the court has patently misunderstood a party; (2) the court has made a

2

decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court." *Hamilton v. O'Connor Chevrolet, Inc.*, 2005 WL 1189589, at *3 (N.D.Ill. Mar. 23, 2005) (citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990)).[1]

Rule 60(b) motions for reconsideration are more structured. Those relying upon Rule 60(b)(2), newly discovered evidence, must demonstrate that:

1) the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial;

2) it was discovered following trial;

3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

4) the evidence is admissible;

5) it is credible;

6) the new evidence is material;

7) it is not merely cumulative or impeaching; and, finally,

8) the new evidence is likely to change the outcome.

*United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992). As explained below, the circumstances of this case warrant reconsideration pursuant to these two rules.

## II. ARGUMENT

Plaintiff files this motion because one ground upon which the opinion relied was erroneous and not raised or briefed by the parties and is therefore appropriate for reconsideration pursuant to Rule 59(e), and because evidence that was available to both parties

---

[1] This passage was largely quoted from Judge Zagel's opionion in *Krippelz v. Ford Motor Co.*, 750 F.Supp.2d 938, 943 (N.D.Ill. 2010).

during briefing has come to counsel's attention, that would likely change the result of the case for some of the calls at issue, appropriate for reconsideration under both Rules 59(e) and 60(b).

### A. The Court Should Consider Plaintiff's Minnesota Collection Agencies Act Argument.

In its opinion granting ICS' motion for summary judgment on its affirmative defenses, the Court decided not to consider plaintiff's argument that the Minnesota Collection Agencies Act restricts the scope of consent, on the ground that the argument was raised for the first time in response to ICS' summary judgment motion. Opinion at footnote 2.

### 1. A Plaintiff Need Not Raise a Response to an Affirmative Defense Prior to Summary Judgment.

Plaintiff respectfully submits that the Court erred in refusing to consider this argument because plaintiff raised it in response to ICS' affirmative defense. The general rule is that "a plaintiff need not plead facts responsive to an affirmative defense before it is raised." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n.10 (8th Cir. 2009). See also *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996) ("Since qualified immunity is an affirmative defense that the defendants have the burden of raising in their answer and establishing at trial or on a motion for summary judgment, a plaintiff, in order to state a claim of constitutional violation, need not plead facts showing the absence of such a defense."); *CSX Transp., Inc. v. Gilkison*, 406 F. App'x 723, 728-29 (4th Cir. 2010) ("To require otherwise would require a plaintiff to plead affirmatively in his complaint matters that might be responsive to affirmative defenses even before the affirmative defenses are raised.") (quoting *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007)),

Further, although plaintiff did not plead the Minnesota law specifically in his Second Amended Complaint, he did plead facts that support this response to the anticipated

affirmative defense.  The Second Amended Complaint pleads that ICS' dialers are located in Minnesota at paragraph 9, and pleads facts supporting the violation in paragraph 10, including that ICS does not "obtain oral consent from debtors to receive prerecorded messages before leaving such a message."

Because plaintiff was under no duty to disclose his response to ICS affirmative defense, and because plaintiff pleaded facts that support the defense, plaintiff respectfully suggests that this Court erred as a matter of law in refusing to consider this argument, and respectfully requests that the Court consider this position.

### 2. There was No Consent for the Prerecorded Message Calls Because ICS did not Comply with Minnesota's Autodialer Laws Requiring a Heightened Level of Consent.

The Minnesota Collection Agencies Act, Minn. Stat. §332.37(13), prohibits debt collection agencies from communicating with debtors by use of an autodialer and prerecorded message *unless the collection agency obtains the oral consent* of the recipient for each call, during the call, to receive a prerecorded message:

> No collection agency or collector shall:
> ****
> communicate with a debtor by use of a recorded message utilizing an automatic dialing announcing device unless the recorded message is immediately preceded by a live operator who discloses prior to the message the name of the collection agency and the fact the message intends to solicit payment and the operator <u>obtains the consent of the debtor to hearing the message</u>.

This section increases a debt collector's burden to obtain a debtor's "consent" to use prerecorded messages during automated telephone calls.  Just as the FDCPA 15 U.S.C. § 1692g duty not to contact the debtor affected the debt collection agency's "consent" to call the

debtor in *Sengenberger*, this state law affects this Minnesota-based collection agency's rights. Section 332.37(13) specifically mentions "consent."

In other words, this state law regulates the way a Minnesota-licensed debt collection agency with dialers located in Minnesota must obtain "consent" to use autodialer equipment and prerecorded messages. Unless a debt collection agency like ICS complies with section 332.37(13), there cannot be consent to use a prerecorded message.

It is undisputed that ICS does not comply with this consent requirement, and there is no dispute that Minnesota laws apply to ICS: a St. Paul-based, Minnesota-licensed debt collection agency. PMF ¶ 3. The only issue is whether ICS' dialers are ADADs pursuant to Minnesota law.

Although not part of the Minnesota Collection Agencies Act, the Minnesota legislature defined ADADs in Minn. Stat. § 325E.26 as such:

> Automatic dialing-announcing device" means a device that selects and dials telephone numbers and that, working alone or in conjunction with other equipment, disseminates a prerecorded or synthesized voice message to the telephone number called.

ICSs dialers fit squarely within this definition. ICS' computers do a query of debt collection accounts that ICS wants to call. The list of accounts, and phone numbers, is then automatically uploaded into the dialer. Unless someone at ICS specifically programs the dialer to call in a particular order or at a particular time, the dialer selects what phone number to call when, and in what order. When calls are answered, the dialer then plays a prerecorded message, or the call is routed to a live collection agent.

The Minnesota Supreme Court equated its ADAD definition to the TCPA's definition:

> Minnesota is hardly alone in voicing concern over the proliferation of ADADs. The federal government and over 40 states have enacted legislation limiting the use of

ADADs. S.Rep. No. 178, 102d Cong., 1st Sess. 3 (1991), U.S.Code Cong. & Admin.News 1991, pp. 1968, 1970.

The authors of the federal statute which regulates use of ADADs-the Telephone Consumer Protection Act of 1991 (effective December 20, 1992)-chose not to limit its regulatory scope to commercial speech, but rather, among other things, banned all computer generated calls to homes unless such a call is made for emergency purposes or the subscriber consents in advance to it. 47 U.S.C.A. § 227(b)(1)(B)….

The [TCPA] does not preempt state ADAD regulations. 47 U.S.C.A. § 227(e)(1).

*State ex rel Humphrey v. Casino Marketing Group, Inc.*, 491 N.W.2d 882, fn.3 (Minn. 1992)

(paragraph breaks supplied).

The Eighth Circuit explained what an ADAD is for purposes of Minn.Stat. § 325E.26 this

way:

These machines can dial telephone numbers either according to a pattern ( e.g., consecutive or random numbers) or as programmed, and, when the telephone is answered, deliver a recorded message.

*Van Bergen v. Minnesota*, 59 F.3d 1541, 1545 (8th Cir. 1995).

There is no question of fact as to whether ICS' dialers select telephone numbers by

computer program and dial those numbers. If the dialer gets a busy signal, it hangs up and tries

the next number. If ICS' dialer connects with a live person, then it plays a prerecorded

message. Sometimes, ICS' dialer will even call debtors twice in a day as part of a dialing

campaign. *State ex rel Humphrey v. Casino Marketing Group, Inc.*, 491 N.W.2d 882, 884 (Minn.

1992).

Because ICS was using an ADAD, and because it did not comply with the Minnesota

Collection Agencies Act's strict consent requirements for such calls, there was no consent for

any such call where a prerecorded message was used, as a matter of law.

Thus, because Minnesota law permissibly restricts ICS did not have plaintiff's "prior express consent" as to any calls where ICS used an autodialer and a prerecorded message, because ICS did not comply with Minn.Stat. § 332.37(13).

Review of Minnesota's statutory language regarding autodialers and the section at issue here reveals that the Minnesota Legislature intended that section 332.37 be applied extraterritorially.  In the definitions section of Minn. Stat. §325E.26, the term "caller" is defined to exclude telephone calls to persons outside Minnesota:

> "Caller" means a person, corporation, firm, partnership, association, or legal or commercial entity who attempts to contact, or who contacts, a subscriber in this state by using a telephone or a telephone line.

Many, but not all, of the surrounding statutory prohibitions on the use of autodialers and prerecorded messages use the term "caller."  E.g. Minn. Stat. §§ 325E.27,  325E.28; 325E.30; compare § 325E.29.  Section § 332.37 of the Collection Agencies Act does not use the word "caller."

Furthermore, the fact that section 332.37(21), which regulates the language of collection letters, applies to letters sent within Minnesota debtors, only, strongly suggests  that the rest of that section applies extraterritorially.   Finally, sections 332.31(3) and 332.32, which define "collection agency," define that term to include companies such as ICS, that operate within the State of Minnesota.

Congress made it clear that it wanted states to be able to regulate the level of consent required for autodialer and prerecorded message calls, as long as such regulations are more stringent and consumer friendly the TCPA.  Subsection 332.37(13) was added to the Minnesota statute in 1987 – four years before the TCPA was enacted in 1991.  Congress knew that there

were state laws with more stringent requirements, and accounted for such in enacting a savings

clause in 47 U.S.C. §227(e):

> (e) Effect on State law
>
>> (1) State law not preempted
>>
>> Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, nothing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits—
>>
>>> (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements;
>>>
>>> (B) the use of automatic telephone dialing systems;
>>>
>>> (C) the use of artificial or prerecorded voice messages; or
>>>
>>> (D) the making of telephone solicitations.

In other words, Minnesota permissibly acted to make it more difficult for Minnesota-licensed

debt collection agencies to obtain consent to use autodialer equipment and prerecorded voice

messages. Because ICS did not comply with the heightened consent requirements, it did not

have consent to make any calls to plaintiff using prerecorded messages, and therefore violated

the TCPA as to those calls. Accordingly, summary judgment for ICS should be reconsidered, and

judgment entered in favor of Frausto. Alternatively, plaintiff requests that the Court permit the

parties to brief the issue of whether plaintiff waited too long to raise this response to ICS'

affirmative defense, which was not addressed by either party in the summary judgment

briefing.

**B. New Evidence Compels Summary Judgment For
Plaintiff as to Calls After Revocation of Consent.**

Exhibit 2 is a letter from plaintiff Diego Frausto to the creditor in this case, PayPal, expressly revoking consent to be called on his cellular telephone. The letter, dated August 19, 2009 and received on August 25, 2009 at 7:23 am, states:

**To Whom It May Concern:**

**I hereby revoke permission for your company or any of its affiliates or subsidiaries to call my cell phone at 224-595-7867.**

Plaintiff respectfully requests that the Court reconsider its summary judgment ruling in light of this document, under the doctrines of excusable neglect and newly discovered evidence. Fed.R.Civ.P. 60. Plaintiff also submits that because this document was available to both parties of the litigation, but was apparently overlooked by both parties, fundamental justice and fairness suggest that the Court should reopen the case and consider this evidence.

Further, the existence, or acceptance of this letter into evidence, would not mean that the parties or this Court "wasted" any time on the case, because the letter was sent after several calls had already been made by ICS.

Thus, the existence of this letter would alter only part of the judgment entered in this case. The United States Postal Service indicates that the letter was received by PayPal on August 25, 2009, at 7:23 AM. This means that ICS had already made nineteen telephone calls to Frausto when it received the demand to cease and desist. Plaintiff's Motion for Summary Judgment at Exhibit B. There were nineteen calls from ICS to plaintiff after PayPal received this letter. *Id.*

As explained in Exhibit 2, the declaration of Diego Frausto, plaintiff did a good faith search both before this litigation began and during discovery to find any and all documents relating to IC System and PayPal.  Exhibit 2 at ¶¶2-4.  It was only when plaintiff read this Court's opinion granting summary judgment for ICS that he realized that there was a missing document.  Id at ¶ 5.  Mr. Frausto "tried [his] very best to locate and produce all relevant documents beforehand, but apparently missed this important document."  Id. at ¶7.  He tried his very best to find all relevant documents, but simply missed this document both times.  Id at ¶ 8.

Plaintiff's failure to locate this document during discovery was obviously not willful – the letter would have helped plaintiff's case.[2]  And although plaintiff's counsel asked defense counsel whether ICS knew about this letter, ICS has not responded.

The Seventh Circuit has set forth an eight-part test as to whether a Rule 60(b)(2) motion should be granted:

> 1) the evidence was in existence at the time of trial or pertains to facts in existence at the time of trial;
>
> 2) it was discovered following trial;
>
> 3) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;
>
> 4) the evidence is admissible;
>
> 5) it is credible;
>
> 6) the new evidence is material;

---

[2] Somewhat ironically, the Court misunderstood plaintiff's "revocation of consent" argument in the summary judgment papers.  Plaintiff cited to the *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, *4 (N.D. Ill. May 5, 2010), as an analogous case to this one, because the circumstances here operated as a revocation. Plaintiff's argument was not that consent had been revoked through sending of a letter.  However, it was this portion of this Court's opinion that apparently sparked the plaintiff's memory that he had sent the revocation letter.

7) it is not merely cumulative or impeaching; and, finally,

8) the new evidence is likely to change the outcome.

*United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992), citing *Mumford v. Bowen*, 814

F.2d 328, 330 (7th Cir.1986). Each of these factors is satisfied in this case.

The letter is dated August 19, 2009, and was in existence at the time of the summary

judgment decision, and was discovered on or about August 23, 2011. Exhibit 2 at ¶ 6. Plaintiff

has demonstrated due diligence through an affidavit explaining that he extensively searched for

this document twice, but did not remember or locate it until after he read this Court's opinion.

This letter is admissible. Plaintiff will testify that he mailed the letter, and obtained the post

office return receipt a few days later.

The evidence is credible. Not only would plaintiff be entitled to a presumption in favor

of receipt by PayPal for mail that was properly addressed, but here plaintiff received a return

receipt from the United States Post Offices, confirming the specific date and time that the

creditor received the cease and desist. See *Sengenberger v. Credit Control Services, Inc.*, 2010

WL 6373008, at *4 (N.D.Ill. June 17, 2010) (certified mail return receipt competent evidence of

receipt of consent revocation).

Finally, this evidence is material, not cumulative and is likely to change the outcome of

the case. As the Court recognized in its opinion, a consumer may revoke consent to be called

on his cellular telephone. *In re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, *Request of ACA International for Clarification and Declaratory Ruling*,

FCC 07-232, GC Docket No. 02-278, 23 FCC Rcd. 559, available at 2008 WL 65485, at ¶ 9 (Dec.

28, 2007) ("persons who knowingly release their phone numbers have in effect given their

invitation or permission to be called at the number which they have given, absent instructions

to the contrary.")  The only question with which the courts struggle is whether revocation must be in writing.  Compare *Gutierrez v. Barclays Group*, 2011 WL 579238, at *3-4 (S.D.Cal. Feb. 9, 2011) ("this Court agrees with Plaintiffs that prior express consent may be revoked orally"); with *Cunningham v. Credit Management, L.P.*, 2010 WL 3791104, at *4-5 (N.D.Tex Aug. 30, 2010) (revocation of consent under the TCPA must be made in writing).

It is patently clear that this situation was not intentional.  Plaintiff had every reason to produce this document that makes his case much stronger.  He made diligent, good faith attempts to find all documents relating to the facts and circumstances of this case, and simply missed this document.  Twice.  This situation is not the result of attorney "sharpshooting" or a party intentionally withholding a damaging document.  The very powerful document attached as Exhibit 2 shows that consent had been revoked.  It was simply overlooked, despite good faith, multiple document searches.  The Court should reconsider its ruling.

**CONCLUSION**

Because each of the requirements for reconsideration are met, and so that this case is decided upon its merits, plaintiff respectfully requests that the Court permit plaintiff to submit Exhibit 2 attached hereto in opposition to ICS' motion for summary judgment.


Respectfully submitted,

/s/Alexander H. Burke


**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601

(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

# Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

DIEGO FRAUSTO,

      Plaintiff,

          v.

IC SYSTEM, INC.,

      Defendant.

No. 10 CV 1363
Judge James B. Zagel

## <u>MEMORANDUM OPINION AND ORDER</u>

Defendant IC System ("Defendant" or "IC") collects debts on behalf of the popular electronic payment service PayPal. IC contacted Plaintiff Diego Frausto ("Plaintiff" or "Frausto") in an attempt to collect a debt Frausto allegedly owed to the auction website eBay. In a second amendment complaint, Frausto sought individual relief under the Fair Debt Collection Practices Act and made a class claim under the Telephone Consumer Protection Act.

The parties have reached agreement on the FDCPA claim. As for the TCPA claim, Defendant moved for summary judgment, Plaintiff cross-moved and also moved for class certification. Taking the summary judgment motion first,[1] I grant it for Defendant.

---

[1] The Seventh Circuit generally disfavors this approach. *Thomas v. City of Peoria*, 580 F.3d 633, 635 (7th Cir. 2009) ("First ruling on the merits of the federal claims, and then denying class certification on the basis of that ruling, puts the cart before the horse, as we have emphasized.") (citing cases). There are, however, recognized exceptional circumstances. *See, e.g. Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 475 (7th Cir. 1997) ("While we agree that it is the better policy for a district court to dispose of a motion for class certification promptly and before ruling on the merits of the case, the failure to follow this preferred procedure does not necessarily amount to reversible error."). Here, the parties have agreed to my ruling on summary judgment before the class certification decision. No doubt a stipulation is a recognized exception to the usual course of considering class certification first.

STATEMENT OF FACTS

Plaintiff Diego Frausto opened a PayPal account in December of 2003.  During the
registration process, Frausto provided his name, email address, street address, bank account
information, and a phone number.

In addition to this personal information, Frausto consented to PayPal's user agreement.
Among other provisions, the agreement contains the following:

> **1.10 Calls to You.**  By providing PayPal a telephone number (including a
> wireless/cellular telephone), you consent to receiving autodialed and prerecorded
> message calls from PayPal at that number.
> **1.2 Your Privacy**.  Protecting your privacy is very important to PayPal.  Please
> review our Privacy Policy in order to better understand our commitment to
> maintaining your privacy, as well as our use and disclosure of your Information.

The Privacy Policy indicates that PayPal may use customer's personal information,
among other things, to resolve disputes and collect fees.

Frausto used his PayPal account as part of a sale he made on the online auction site eBay.
Frausto sold a handbag to a third party who in turn claimed it was damaged.  Frausto offered a
refund, minus a twenty percent restocking fee.  The buyer refused and took the dispute to PayPal.
PayPal decided in favor of the buyer, gave the buyer a refund, and debited Frausto.  The end
result was a negative balance of $254.41 in Frausto's account.

PayPal contracts its debt collection function to Defendant IC Systems.  Defendant admits
sending collection letters and placing at least three calls to the number Frausto provided also
attempting to collect the debt.  Plaintiff asserts there were as many as thirty-eight calls to his
number.

2

## I. STANDARD OF REVIEW

Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party meets this initial burden, the nonmoving party must then go beyond the pleadings and "designate specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A district court views all evidence and inferences in the light most favorable to the nonmoving party. *Id.* at 255. On cross-motions for summary judgment, the court applies this standard to both motions; in other words, it must view all facts and draw all reasonable inferences in a light most favorable to the party against whom the motion is made. *Tate v. Long Term Disability Plan for Salaried Employees of Champion Int'l Corp. #506*, 545 F.3d 555, 559 (7th Cir. 2008).

## II. ANALYSIS

In relevant part, the Telephone Consumer Protection Act ("TCPA") makes it unlawful for persons

> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice
> ...
> (iii) to any telephone number assigned to a...cellular telephone service.

47 U.S.C. § 227(b)(1)(A)(iii).

Interpreting the "prior express consent" exception, the FCC has declared:

> Because we find that autodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the "prior express consent" of the called party, we clarify that such calls are permissible. We conclude that the provision of a cell phone number to a creditor, *e.g.,* as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt. In the *1992 TCPA Order*, the Commission determined that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.

*In re: Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. 559, ¶ 9 (F.C.C. 2007).  For purposes of this provision, third-party debt collectors step into the shoes of the creditor on whose behalf they are recovering the debt.  *Id.* at ¶ 10.  The burden of establishing consent is on the creditor.  *Id.*  The FCC's declaratory rulings on this subject bind me pursuant to the Hobbs Act, *see* 47 U.S.C. § 402*,* and in any event the parties do not question the rulings.

The dispositive issue here is the application of the "prior express consent" defense to the facts of this case.  Defendant claims the defense applies because Plaintiff provided his mobile phone number in applying for his PayPal account, that that number is the one used to pursue the debt, and that for purposes of pursuing the debt they step into the shoes of PayPal.  Plaintiff counters that the terms of PayPal's agreement only authorize PayPal itself to use his number to contact him regarding the debt.  He further argues that he revoked his consent.

Plaintiff's first argument is plainly off the mark, because even if I assume that the contract limited use of his number to PayPal, the FCC's ruling makes it clear that Defendant is,

for purposes of the TCPA "PayPal" when it calls Plaintiff. *See In re: Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C.R. at ¶ 9 (F.C.C. 2007).

As to Plaintiff's argument that he revoked his consent, he cites my ruling in *Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, *4 (N.D. Ill. May 5, 2010). In that case, plaintiff debtor sued a collection agency for its use of auto-dialed, pre-recorded calls. *Id.* at *3. In disputing the defendant's "prior express consent" argument, the plaintiff argued that even if he had consented to the calls in the first instance, he revoked his consent by sending a letter via certified mail in which he disputed the debt and demanded the defendant to seek its calls. *Id.* at *4. Specifically the plaintiff argued that the letter invoked the following provision of the Fair Debt Collection Practices Act:

> If the consumer notifies the debt collector in writing within the thirty-day period [after receiving the initial communication] that the debt, or any portion thereof, is disputed..., the debt collector shall cease collection of the debt, or any disputed portion thereof, is disputed..., the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification or judgment and a copy of such verification is mailed to the consumer by the debtor.

15 U.S.C. § 1692g(b). Interpreting that provision, I found that the plaintiff had effectively revoked his consent for calls placed after defendant received the letter, which was duly shown by plaintiff's certified mail receipt. *Sengenberger*, 2010 WL 1791270 at *4.

The problem for Plaintiff here is that he has sent no such letter. Tellingly, though Plaintiff cites to *Sengenberger* and the relevant FDCPA provision in his brief, he points to no facts on the record in this case that support their application here. With no evidence of written

5

notification to the debtor after receiving calls, I find that Plaintiff did not revoke his consent

pursuant to 15 U.S.C. § 1692g(b).[2]

III. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is DENIED and

Defendant's motion is GRANTED. The motion for class certification is DENIED AS MOOT.


ENTER:

_James B. Zagel_

James B. Zagel
United States District Judge

DATE:  August 22, 2011

---

[2]Plaintiff additionally argues that he did not provide consent as that term is defined under the Minnesota Collection Agencies Act.  Minn. Stat. § 332.37(13).  But this argument is made for the first time in Plaintiff's response to Defendant's motion for summary judgment - the first time Minnesota state law was referenced in the case, despite Plaintiff having filed two amended complaints and his own motion for summary judgment.  Because the argument is brought in for the first time so late in the game, I do not consider it. *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002) ("a plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment" (quoting *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996))).

6

# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
| Plaintiff, | ) | 1:10-cv-1363 |
| | ) | |
| v. | ) | Judge Zagel |
| | ) | |
| IC SYSTEM, INC., | ) | JURY DEMANDED |
| Defendant. | ) | |

## DECLARATION OF DIEGO FRAUSTO

Diego Frausto hereby states under penalty of perjury that the following statements are true:

1.      I am Diego Frausto, the plaintiff in the above-captioned case.

2.      I sent the letter attached as Exhibit 1 to PayPal on August 19, 2009, return receipt requested. I received the attached return receipt from the United States Post Office several days later.

3.      I searched my records in good faith for documents and things relating to Paypal and IC System before this case was filed, and provided these documents to my lawyer.

4.      I did another search in good faith for these items when responding to the defendant's discovery requests.

5.      This document did not show up in either search. I believed at the time that both of these searches had been exhaustive, and that I had provided all documents, data and things relating to both Paypal and IC System to my lawyer for review and forwarding to IC System, if appropriate.

6.      On about August 23, 2011, when I read the Court's opinion dismissing the case, particularly the portion on page that states that plaintiff "has sent no such letter" referring to a revocation of consent, I was reminded of the document attached as Exhibit 1.

7.      I went back through my files, and through an additional search through my files was able to locate Exhibit 1.

8.    I can not explain how or why Exhibit 1 was never disclosed to my attorney until August

23, 2011, except to say that I tried by very best to locate and produce all relevant documents

beforehand, but apparently I missed this important document.

Executed on September 19, 2011
At Chicago, Illinois

_____
Diego Frausto

Diego Frausto
481 Diane Dr.
Buffalo Grove, Il 60089
USA

August 19, 2009

**SENT VIA USPS CERTIFIED MAIL #7006 2760 0002 9227 9360**
**RETURN RECEIPT REQUESTED**

PayPal
2211 N. First Street
San Jose, CA 95131

To Whom It May Concern:

I hereby revoke permission for your company or any of its affiliates or subsidiaries to call
my cell phone at 224-595-7867.

Sincerely,

Diego Frausto

Diego Frausto
481 Diane Dr.
Buffalo Grove, IL 60089



CERTIFIED MAIL™

7006 2760 0002 9227 9360

PayPal
2211 N. First Street
San Jose, CA 95131

 **UNITED STATES POSTAL SERVICE**

Date: 08/25/2009

Diego Frausto:

The following is in response to your 08/21/2009 request for delivery information on your Certified Mail(TM) item number 7006 2760 0002 9227 9360. The delivery record shows that this item was delivered on 08/25/2009 at 07:23 AM in SAN JOSE, CA 95131 to R MOLINA. The scanned image of the recipient information is provided below.

Signature of Recipient:



Address of Recipient:



Thank you for selecting the Postal Service for your mailing needs. If you require additional assistance, please contact your local Post Office or postal representative.

Sincerely,

United States Postal Service