**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **DIEGO FRAUSTO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | Case No. 10-cv-1363 |
| v. ) | |
| ) | Judge Zagel |
| **IC SYSTEM, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**IC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR
RECONSIDERATION**</u>

David M. Schultz
Peter E. Pederson
Avanti Bakane
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000
Fax: (312) 704-3001
*Counsel for Defendant, IC System, Inc.*

**INTRODUCTION**

This Court correctly entered summary judgment against plaintiff on his claim under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(3), because plaintiff consented to receive, on his cell phone, the collection calls that IC System, Inc. ("IC") made using its predictive dialer. Section 227(b)(1)(A)(iii) of the TCPA prohibits using automated equipment to call a cell phone only if the call is made without the called party's prior express consent. Plaintiff admits that he gave the number that IC called to his creditor, PayPal, Inc. ("PayPal"). By doing so, he consented to receive autodialed calls relating to his PayPal debt at the number he provided, and IC's calls therefore did not violate the TCPA.

Plaintiff has moved for reconsideration of the judgment on two bases, neither of which has merit. First, in his Federal Rule of Civil Procedure 59(e) challenge, plaintiff contends that the Court incorrectly found that he waived the issue of whether IC's calls violate the TCPA because IC failed to obtain his consent to the calls in the manner specified by the Minnesota Collection Agencies Act ("MCAA"), § 332.37(13). Below defendant shows that plaintiff did waive his MCAA argument, but even if he preserved the issue it would not matter because: (1) the TPCA does not provide a private right of action for purported violations of the MCAA; and (2) under choice-of-law principles, the MCAA cannot be invoked by an Illinois resident who received calls in Illinois at an Illinois area-code number.

In his Rule 60(b) challenge, plaintiff contends that the Court should grant relief from the judgment because after discovery ended and after the Court ruled on the motions for summary judgment, he found an August 19, 2009 letter in which he purportedly revoked the permission that he had granted PayPal to make autodialed calls to his cell phone. This argument is unavailing because plaintiff cannot show due diligence. Throughout the litigation, plaintiff admittedly was in possession of the letter, and he does not deny that he was aware of its

existence. He bears the burden of explaining why and how he promptly found the document once the Court entered summary judgment, but was allegedly unable to do so when he prepared his Rule 26(a)(1) disclosures and answered IC's discovery (which requested the letter). At best, plaintiff was careless in searching for the letter, and carelessness is the opposite of diligence, so he is foreclosed from relief under Rule 60(b). In addition, the letter is immaterial and unlikely to change the outcome of the case. Plaintiff's contract with PayPal gives it the right to call his cell phone. Plaintiff could not unilaterally revoke that right any more than a borrower could unilaterally revoke a lender's right to collect interest on a loan or foreclose on collateral.

## ARGUMENT

### I. The MCAA Does Not Save Plaintiff's TCPA Claim.

Plaintiff argues that IC's calls to his cell phone violate the TCPA because IC failed to obtain his consent to the calls in the manner specified in the MCAA. Plaintiff's reliance on the MCAA is unavailing for two reasons. First, the Court correctly found that plaintiff waived this argument by failing to raise it his complaints or his opening brief in support of his motion for summary judgment. Second, the MCAA makes no difference to the outcome of this case because IC's calls complied with the TCPA even if IC failed to obtain plaintiff's consent to its calls as required by the MCAA.

Because plaintiff contends that the Court made an error of law when it refused to consider his argument concerning the MCAA, this basis for his motion for reconsideration is encompassed by Rule 59(e), which authorizes reconsideration of matters already decided on the merits. *Obriecht v. Raemisch*, 517 F.3d 489, 494-495 (7th Cir. 2008).

#### A. Plaintiff Waived His Argument Based on the MCAA.

If a party assumes in its briefs that a particular jurisdiction's law applies, he gives implied consent sufficient to establish choice of law. *Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–*

*Abbett–McCarthy–Stratton,* 888 F.2d 239, 242 (2d Cir. 1989); *Larsen v. A.C. Carpenter, Inc.*, 620 F. Supp. 1084, 1103 (E.D. N.Y. 1985) *aff'd* 800 F.2d 1128 (2d Cir. 1986). In *Lott v. Levitt,* 556 F.3d 564, 567-68 (7th. Cir. 2009), the Seventh Circuit found that a plaintiff waived his argument that Virginia law applied because in response to a motion to dismiss his counsel agreed that Illinois law applied and he did not invoke Virginia law until he filed a motion for reconsideration of the dismissal of his original complaint and a motion for leave to file an amended complaint.

Here, as in *Lott,* plaintiff waived his argument concerning the MCAA by not raising it until he responded to IC's motion for summary judgment. Plaintiff filed his original complaint on March 15, 2010, he filed his amended complaint on April 15, 2010, and he served his motion for summary judgment on February 24, 2011. [DE # 1, DE #11, and DE #30 at ¶ 3]. Plaintiff did not raise his argument concerning the MCAA until he filed his response to IC's motion for summary judgment on March 31, 2011, more than a year after the litigation began. [DE # 39]. By waiting until then to raise his argument concerning the MCAA, plaintiff waived the argument. *Lott,* 556 F.3d at 568.

According to plaintiff, his MCAA argument is a response to an affirmative defense and may be asserted for the first time in response to IC's motion for summary judgment. Plaintiff cites cases that stand for the proposition that a complaint should not be dismissed simply because the plaintiff fails to allege facts that if proven would rebut the defendant's affirmative defenses. *See e.g.*, *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 601 n. 10 (8th Cir. 2009). But this Court did not dismiss plaintiff's complaint under Rule 12(b)(6) because he failed to allege that he did not consent to receive IC's calls on his cell phones. The Court entered *summary judgment* on the

3

claim because the *evidence* showed that plaintiff consented to receive IC's calls. Consequently, the cited cases are inapt and the Court should deny the motion for reconsideration.

> B.   **Even if the Court Considers the MCAA Argument, the TCPA Claim Would Fail as a Matter of Law.**
>
> > 1.   **The TCPA Does Not Provide a Private Right of Action for Alleged Violations of the MCAA.**

Frausto argues that IC's calls violate the TCPA because IC allegedly failed to obtain his consent to hearing recorded messages in the manner required under the MCAA, § 332.37(13), which states that a collection agency must not:

> communicate with a debtor by use of a recorded message utilizing an automatic dialing announcing device unless the recorded message is immediately preceded by a live operator who discloses prior to the message the name of the collection agency and the fact the message intends to solicit payment and the operator obtains the consent of the debtor to hearing the message;

As IC showed in its reply in support of its motion for summary judgment [DE # 52], Frausto's argument is fallacious because the TCPA provides a private right of action for only violations of 47 U.S.C. § 227(b) and the Federal Communications Commission's ("FCC") implementing regulations; it does not provide a private right of action for violations of the MCAA or other law. The provision creating the private right of action under the TCPA states:

> a person … may, if otherwise permitted by the laws or rules of court of a State, bring, in an appropriate court of that State—
>
> (A) an action based on a violation of *this subsection or the regulations prescribed under this subsection* to enjoin such a violation,
>
> (B) an action to recover for actual monetary loss from *such a violation*, or to receive $500 in damages for *each such violation*, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3) (italics added). The plain language of the TCPA authorizes an action for violations of § 227(b) and the FCC's implementing regulations (which are located at 47 C.F.R. §

4

64.1200). Because the TCPA does not provide a private right of action for violations of state law, Frausto could not recover damages under the TCPA even if he could show that IC violated § 332.37(13) of the MCAA.

Furthermore, § 227(b)(3) states that the private right of action is available only "if otherwise permitted by the laws … of a State." Plaintiff cannot maintain an action under the TCPA for an alleged violation of the MCAA because Minnesota law does not permit a private right of action for violations of the MCAA. *Edeh v. Midland Credit Management, Inc.,* 748 F.Supp.2d 1030, 1037-38 (D. Minn. 2010).

Plaintiff notes that under the TCPA's saving clause, the TCPA does not preempt any state law that imposes more restrictive intrastate requirements on, or that prohibits, "the use of automatic telephone dialing systems." 47 U.S.C. § 227(e)(1)(B). The saving clause by its terms does not apply here because IC's calls to plaintiff were interstate. But even if the clause applied, it would not matter because the TCPA does not provide a private right of action for violations of the MCAA. Consequently, plaintiff's reliance on the saving clause is a red herring.

### 2. The MCAA Does Not Govern Whether Plaintiff Consented, for Purposes of the TCPA, to Receive Calls on His Cell Phone.

Whether plaintiff consented to receive IC's calls for purposes of the TCPA is controlled not by the MCAA, but by the TCPA and the detailed rules adopted by the FCC. The TCPA states that the *FCC,* not the states, is to prescribe regulations to implement the prohibition on placing autodialed calls to cell phones. 47 U.S.C. § 227(b)(2). In 2008, pursuant to its rulemaking authority, the FCC[1] determined that "prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party." *In the Matter of Rules and Regulations Implementing the Telephone Consumer*

---

[1] A district court must accept the FCC's interpretation of the TCPA as expressed in its regulations and orders. *CE Design, Ltd. v. Prism Bus. Media, Inc.,* 606 F.3d 443, 449-50 (7th Cir. 2010).

5

*Protection Act of 1991,* FCC Declaratory Ruling No. 07-232, 23 FCC Rcd. 559 ¶ 9 (the "2008 Order"). The ruling provides that the "provision of a cell phone number to a creditor [constitutes] prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." 2008 Order ¶ 9. "Calls by a third-party collector on behalf of [the] creditor are treated as if the creditor itself placed the call." 2008 Order ¶ 10. Earlier, the FCC ruled that "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary." *In re Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991,* 7 FCC Rcd. 8752, 8769 ¶ 31 (1992) (the "1992 Order").

Plaintiff puts forth no reason for concluding that the Minnesota act governs whether a party has consented to receive an autodialed call for purposes of the TCPA. Nothing in the TCPA indicates that the question of consent is controlled by state law. On the contrary, as stated, the TCPA gives the FCC authority to prescribe regulations to implement the TCPA's prohibitions, 47 U.S.C. § 227(b)(2), and the FCC has ruled that a debt collector may use a predictive dialer to call a debtor at a number he provided to the creditor. 2008 Order ¶ 9. Moreover, plaintiff's contention is inconsistent with the fact that the MCAA and TCPA are administered by different government agencies, and they regulate different fields of activity.[2] In short, Frausto consented to receive IC's calls under the TCPA even if he did not consent to the calls under the MCAA.[3]

---

[2] The FCC administers the TCPA (47 U.S.C. § 227(b)(2), 47 U.S.C. § 154(a)), while the Minnesota Commissioner of Commerce administers the MCAA. Minn. Stat. §§ 332.311, 332.44. The TCPA regulates telemarketing calls and the use of automated telephone equipment, while the MCAA regulates debt collection. *Compare* 2008 Order ¶ 2 *with* Minn. Stat. §§ 332.31 *et seq.*

[3] Plaintiff incorrectly suggests that IC uses a fully automated dialing system which selects the phone numbers to be called and then calls them without any human involvement. [DE # 66 at 6; DE # 40, at 3]. Scott Elison, IC's Federal Rule 30(b)(6) representative on the subject of its dialing system, testified that human beings employed by IC are responsible for selecting every phone number that IC calls by means of its dialing system, and

6

### 3. Under Choice-of-Law Principles, an Illinois Plaintiff with No Connection to Minnesota May Not Invoke the MCAA.

Even if state law had some bearing on whether plaintiff consented to receive IC's calls under the TPCA, plaintiff could not invoke Minnesota law because his TCPA claim has no connection to the state of Minnesota. Plaintiff is an Illinois resident. [DE # 18 ¶ 5]. IC called plaintiff at a phone number with an Illinois area code. [Frausto's Response to IC's Local Rule 56.1 Statement, DE # 39, ¶¶ 1, 6]. IC called plaintiff to ask him to pay money in Illinois, for a debt that arose from goods he advertised and sold in Illinois. [DE # 35 ¶¶ 19-32]. Plaintiff does not allege that he was in Minnesota when IC called him, nor does he allege other facts (other than IC's presence in Minnesota) that establish a connection between his claim and Minnesota. [DE # 18].

Under Illinois choice-of-law rules, courts apply Illinois substantive law unless there is a conflict of law that would change the outcome of the litigation. *Perovich v. Humphrey*, 97 C 3209, 1997 WL 674975, at *5 (N.D. Ill. Oct. 28, 1997) (Zagel, J.); *see also Pestel v. Gulfstream Aerospace Corp.*, 09 CV 6113, 2011 WL 3157294 (N.D. Ill. July 26, 2011) (Zagel, J.). If there is a conflict, the court applies Illinois choice-of-law principles to decide which state's substantive law to apply.[4] *Id.* The Illinois Supreme Court has adopted Restatement (Second) of Conflicts § 145(1) (1971), which provides that in a tort case, courts presume that the law of the place of injury governs the dispute. *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 903-904 (Ill. 2007). This presumption can be overcome only if "another state has a more significant relationship with the occurrence and with the parties with respect to the particular issue." *Id.* at

---

that for most dialing campaigns a human being has specified the order in which the phone numbers included in the campaign should be called. (Elison Dep., included in DE # 38-1, at 17:5-18:13).

[4] No provision of Illinois law is analogous to § 332.37(13) of the MCAA.

7

903. In deciding whether another state has a more significant relationship, courts examine the following factors under § 145(2) of the Restatement:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

*Perovich,* 1997 WL 674975, at *5; *Nicholson v. Marine Corps W. Fed. Credit Union*, 953 F. Supp. 1012, 1016 (N.D. Ill. 1997).

Since IC made the calls to plaintiff while he was in Illinois, Illinois is the place where any injury caused by the calls would have occurred and Illinois law presumptively governs this case under § 145(1) and *Townsend*. Plaintiff has not shown that the presumption that Illinois law governs is rebutted by the § 145(2) factors. Any alleged injury occurred here (factor (a)). The parties' relationship was centered here (factor (d)) because IC sought to collect money from plaintiff in Illinois, and he owed the money as a result of goods he sold and advertised in Illinois. [DE # 35 ¶¶ 19-32]. Accordingly, the presumption under § 145(1), and the first and fourth factor under § 145(2), favor applying Illinois law. While IC is located in Minnesota and it made the calls from Minnesota, plaintiff is domiciled in Illinois. Consequently, factors (b) and (c) are a wash. *Townsend,* 879 N.E.2d at 906; *Perovich,* 1997 WL 674975, at *5.

Because the parties' relationship is centered in Illinois, the alleged injury occurred here, and the other factors are neutral, the presumption is unrebutted and Illinois law applies. *Townsend,* 879 N.E.2d at 906 (court applied Michigan law because injury occurred there, relationship was centered there, and plaintiff resided there; that defendant engaged in wrongful conduct in Illinois was insufficient to rebut presumption under § 145(1)); *see also Perovich*,

1997 WL 674975 at *5-*6 (Illinois consumers allegedly injured by collection activities performed by defendant in California could not invoke California law); *Nicholson,* 953 F. Supp. at 1016 (same).Hence, plaintiff cannot invoke the MCAA.

This conclusion also follows from the fact that Minnesota laws do not apply extraterritorially. Minnesota has adopted "a general presumption that its statutes do not apply extraterritorially." *Capitol Records Inc. v. Thomas-Rasset,* 2009 WL 1664468, *2 (D. Minn. 2009). Applying a similar presumption under Illinois law, the Illinois supreme court held that the Consumer Fraud Act, 815 ILCS § 505/2, does not apply to allegedly "fraudulent transactions which take place outside Illinois," even when the defendant's principal place of business is located in this state and the defendant devised and disseminated the fraudulent scheme in this state. *Avery v. State Farm Mut. Auto. Ins. Co.,* 835 N.E.2d 801, 853 (Ill. 2005); *see also Schnall v. AT&T Wireless Services, Inc.,* 225 P.3d 929, 938-39 (Wash. 2010) (claim under Washington Consumer Protection Act may only be brought on behalf of people located within Washington, even if corporate defendant is based there and engaged in disputed transaction there).

For these reasons, if state law affected whether plaintiff consented to receive IC's calls under the TCPA, Illinois law would apply, and plaintiff would be unable to invoke the MCAA.

## II.     Plaintiff Cannot Obtain Relief from the Judgment Based on the August 19, 2009 Letter to PayPal.

In his second argument, plaintiff contends that the Court should grant relief from the judgment because after discovery ended and after the Court ruled on the motions for summary judgment, he found an August 19, 2009 letter in which he purportedly revoked the permission he had granted PayPal to make autodialed calls to his cell phone. This letter allegedly stated, "I hereby revoke permission for your company [PayPal] or any of its affiliates or subsidiaries to call my cell phone at 224-***-**67." A copy of the letter is attached to the motion for

9

reconsideration. IC first became aware of the letter on September 13, 2011, when it received a copy of the letter from its counsel in this litigation. (Affidavit of Sue Johnson at ¶ 5, attached as Exhibit A). At no time did PayPal send the letter to IC. At no time did PayPal notify IC that plaintiff allegedly sent it a letter in which he claimed to revoke permission to be contacted on his cell phone. (*Id.* at ¶ 6). Twice plaintiff asserts that IC had access to the letter during the pendency of the litigation [DE # 66 at 2, 10], but IC did not even know the document existed until he filed his motion for reconsideration.

Rule 60(b)(2) permits relief from a judgment where a litigant presents newly discovered evidence that could not have been discovered by due diligence in time for summary judgment. *Parks v. McDonald*, 170 Fed.Appx. 964, 968 (7th Cir. 2006). Relief under Rule 60(b)(2) "is an extraordinary remedy that is to be granted only in exceptional circumstances." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999). A plaintiff may obtain relief based on new evidence only if: (1) The evidence was discovered following trial; (2) Due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) The evidence is not merely cumulative or impeaching; (4) The evidence is material; and (5) The evidence is such that a new trial would probably produce a new result. *Id.; see also Jones v. Lincoln Elec. Co.,* 188 F.3d 709, 732 (7th Cir. 1999). Here, plaintiff's Rule 60(b) motion should be denied because the he has not shown due diligence, the letter is unlikely to produce a new result, and the letter is immaterial.

      A.      **Plaintiff Has Not Shown Due Diligence.**

In discovery, IC asked plaintiff to identify, and produce copies of, all communications he had with PayPal. [DE # 35-5 at Interrogatory No. 5 and Production Request No. 11]. Plaintiff did not disclose the August 19, 2009 letter in response to discovery or with his disclosure under Federal Rule 26(a)(1)(B). [DE # 66 at 2]. He again failed to produce the letter when the parties

filed motions for summary judgment. Plaintiff claims that he conducted two searches for documents relating to PayPal, but he does not explain why the search he conducted after the Court entered summary judgment was successful while the earlier searches were not. (Frausto affidavit (DE # 66 at 23) ¶¶ 3-5). Plaintiff does not say where the letter was, or why he thought to look there only after the Court issued its ruling. (*Id.*). Plaintiff describes the letter as "very powerful" evidence that he did not consent to receive IC's calls. [DE # 66 at 13]. If the letter were very powerful evidence on a key issue, plaintiff had an increased obligation to locate the document. Because plaintiff has not offered any facts to explain his failure to produce the document in discovery, he has not shown due diligence.

*U.S. v. McGaughey,* 977 F.2d 1067 (7th Cir. 1992), is instructive. There, after the district court entered summary judgment against the taxpayer in the United States' action to recover a $2.3 million tax deficiency, the taxpayer moved for relief under Rule 60(b)(2) based on a newly discovered document that allegedly showed that the statute of limitations had run. He contended that he was previously unaware of the document (which was created 20 years before the filing of the lawsuit) and he had not found it during the litigation because it was filed among papers regarding an unrelated matter. The Seventh Circuit affirmed the district court's finding that the taxpayer failed to establish diligence because "given the importance of the document, one would have expected McGaughey to search all of his papers." The taxpayer's possession of the document "throughout the pendency of the proceedings below further belie[d] the claim of diligence." *Id.* at 1075. Plaintiff's attempt to establish diligence here is even weaker: he wrote the letter in August 2009, or about six months before he filed suit on March 1, 2010; he does not explain where the letter was while the suit was pending or why he found it only after the Court entered summary judgment.

11

Feeble efforts to find documents do not establish due diligence under Rule 60(b). Since plaintiff was able to find the letter after summary judgment was entered, he could and should have found it during discovery, and his failure to do so at best amounts to carelessness, which precludes a finding of diligence. *See Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 293 (E.D. N.Y. 2004) (no diligence shown where newly discovered document was important to plaintiff's case, she always had possession of it, and she failed to produce it due to carelessness); *see also United States v. Potamkin Cadillac Corp.,* 697 F.2d 491, 493 (2d Cir. 1983) (no diligence shown where plaintiff made inadequate attempts to locate actual copy of report or proof of its filing); *Valmont Indus., Inc. v. Enresco, Inc.,* 446 F.2d 1193, 1195 (10th Cir. 1971) (no diligence shown because an ordinary search of patents would have located the patent asserted to be "newly discovered evidence").

Plaintiff claims that the Court's opinion "reminded" him of the revocation letter, but he does not claim that he had forgotten about the letter until then. (Frausto affidavit ¶ 6 (DE # 66 at 23-24)). His affidavit is consistent with the possibility that he knew he was in possession of the letter and simply failed to beat down the bushes to find it until the Court entered summary judgment. Plaintiff's awareness of the letter would, independently of the careless searches he conducted, establish lack of diligence. *Zurich N. Am. v. Matrix Serv., Inc.,* 426 F.3d 1281, 1290 (10th Cir. 2005) (holding that evidence was not newly discovered where litigant knew that it was missing before trial); *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.,* 320 F.3d 809, 815 (8th Cir. 2003) (concluding that defendant was not diligent in acquiring latitude-longitude report for negligence suit arising from truck accident where defendant's attorneys knew that plaintiff possessed data but simply failed to request production); *see also Parks v. McDonald,* 170 Fed.Appx. 964, 968 (7th Cir. 2006) (plaintiff was not diligent where he "knew about the

12

potential evidence, and had access to it, but simply failed to locate it before responding to the summary judgment motion").

Last, the Court should consider the differences between plaintiff's letter argument and the arguments in his earlier briefs. Previously, plaintiff argued that IC was liable under the TCPA because IC failed to obtain his consent to its calls under the MCAA and because the terms of PayPal's user agreement gave PayPal but not IC the right to call his phone. If successful, plaintiff presumably would argue that these grounds for liability serve as a basis for entering judgment in favor of all class members who entered into similar user agreements or who did not consent to IC's calls under the MCAA. In contrast, the argument regarding the August 19, 2009 letter cannot possibly apply to all putative class members: the letter relates to plaintiff alone, and there is no classwide evidence showing when and whether any other class members sent PayPal similar letters. For all these reasons, plaintiff has failed to show diligence.

**B.      The Letter Is Immaterial, and It Does Not Change the Outcome of the Case.**

In his user agreement with PayPal, plaintiff consented "to receiving autodialed and prerecorded message calls from PayPal at" the phone number he provided. (User Agreement ¶ 12 (available at DE # 43-4 at 4 of 49)). Plaintiff contends that by sending PayPal the August 19 letter he revoked the permission he granted PayPal in the user agreement. Plaintiff cannot, however, amend the contract by simply sending PayPal a letter stating new terms. Rather, an amendment must conform to the terms of the user agreement and be supported by consideration; the letter meets neither of these requirements.

The PayPal user agreement provides that PayPal may amend the agreement by posting a revised version on its website. (DE # 43-4 at 4). Plaintiff has no evidence that PayPal posted a revised version of the agreement that omitted the provision in which plaintiff consented to receiving PayPal's calls. Moreover, to support modification of an agreement, the parties must

13

supply valuable consideration. *Brody v. Finch Univ. of Health Sciences/The Chicago Med. Sch.*, 698 N.E.2d 257, 267 (Ill. App. 1998); *Flint v. Court Appointed Special Advocates of Du Page County, Inc.*, 674 N.E.2d 831, 839 (Ill. App. 1996). "Valuable consideration for a contract consists of some right, interest, profit, or benefit accruing to one party, or some forbearance, detriment, loss, or responsibility given, suffered, or undertaken by the other." *Flint,* 674 N.E.2d at 839. Plaintiff identifies no consideration that he provided in return for PayPal's supposed relinquishment of its contract right to call his cell phone.

Because the letter does not conform to the amendment procedure in the user agreement, and it is unsupported by consideration, it had no effect on the right of PayPal and IC to call plaintiff's cell phone. The fallacy of plaintiff's argument is highlighted if it is transferred to the context of a mortgage loan. If a homeowner borrowed money to buy his home and then sent the bank a letter, stating, "I revoke your right to collect principal and interest under the mortgage and note," the letter would not affect the terms of either agreement, and the bank would retain the right to repayment of the principal with interest. Likewise plaintiff could not rewrite the PayPal agreement by sending PayPal a letter that purported to revoke ¶ 12. The letter therefore does not change the outcome of the case, it is not material, and plaintiff's motion for relief from the judgment should be denied.

      **C.**     **Plaintiff Cannot Base a Motion for Reconsideration under Rule 59(e) on the Letter.**

Plaintiff admits that he had the August 19, 2009 letter throughout the pendency of the litigation. (September 19, 2011 Declaration of Plaintiff, included within DE # 66 at pp. 23-24). He cannot contend that he was unable to produce the letter before judgment was issued. (Decl.). The letter cannot form the basis for a motion under Rule 59(e) because that rule may not be used "to present evidence that could have been presented before judgment was entered." *Obriecht v.*

14

*Raemisch*, 517 F.3d 489, 493-94 (7th Cir. 2008) (in civil rights case court properly refused to consider grievances that prisoner presented to show exhaustion of administrative remedies because the grievances were available to plaintiff before the court ruled on the exhaustion defense); *Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007). Rule 59(e) "does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." *United States v. Resnick*, 594 F.3d 562, 568 (7th Cir. 2010). Under this authority, the Court should reject any attempt to set aside the judgment under Rule 59(e) based on the letter.

## CONCLUSION

For the above reasons, this Honorable Court should deny plaintiff's motion for reconsideration of the order entering summary judgment in favor of defendant.

Respectfully submitted

IC SYSTEM, INC.

By:   /s/ Peter E. Pederson
      One of its Attorneys

David M. Schultz
Peter E. Pederson
Avanti Bakane
HINSHAW & CULBERTSON LLP
222 N. LaSalle Street, Suite 300
Chicago, Illinois 60601
(312) 704-3000
Fax: (312) 704-3001

## **CERTIFICATE OF SERVICE**

The undersigned attorney certifies that on October 28, 2011, he served this document by causing a copy to be electronically filed through the Court's CM/ECF system, which will make a copy available to counsel of record identified below.

/s/ Peter E. Pederson

**Service List**

Alexander H. Burke, Esq.
ABurke@BurkeLawLLC.com
BURKE LAW OFFICES, LLC
155 N. Michigan Avenue, Suite 9020
Chicago, Illinois 60601