IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DIEGO FRAUSTO, | ) | |
|     Plaintiff, | ) | 1:10-cv-1363 |
| | ) | Judge Zagel |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| IC SYSTEM, INC., | ) | |
|     Defendant. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF RECONSIDERATION**

The Court should reconsider its order on summary judgment because (1) ICS' three prerecorded message calls to plaintiff were impermissible under Minnesota law, and plaintiff therefore could not have consented to receive them, and (2) plaintiff expressly revoked consent in writing through a letter that was not located by either party until after summary judgment was decided.

ICS does not have a defense as to the calls that used its autodialer *and* a prerecorded message, as to the three calls made on August 18, 19 and 22, 2010, SMF ¶4, because Minnesota law prohibited those calls, and parties are not free to "consent" or "contract" to make or receive illegal calls. This Court erred in refusing to consider plaintiff's argument on this point, and should do so now and find for plaintiff as to these three calls.

Further, plaintiff revoked consent to receive autodialed and prerecorded calls through a letter that the United States Post Office return receipt indicates PayPal, ICS' client, received on August 21, 2010 at 7:23 am. Exhibit 2 to reconsideration motion. Plaintiff searched for all documents relating to this case several times, but did not find this document until after summary judgment had been decided. Because plaintiff has acted in good faith throughout the case, and because consideration of this letter would be consistent with the factors delineated in *United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992), the Court should grant reconsideration, and enter summary judgment for plaintiff as to the 23 calls ICS made to his cellular telephone after revocation was effective.

1

The Court did not decide the issue of whether ICS' dialer falls within the statutory definition. If it finds for plaintiff as to consent, this inquiry will easy because ICS has admitted that its dialer falls within the Federal Communications Commission's definition, which is binding. *Griffith v. Consumer Portfolio Services, Inc.*, No. 10 C 2697, 2011 WL 3609012 (N.D.Ill. Aug. 16, 2011). The Court should reconsider its ruling as to prior express consent, and enter summary judgment as to the calls presented herein.

### A. Plaintiff Should be Permitted to Present his Argument that the Prerecorded Message Calls were Impermissible Pursuant to Minnesota Law.

"Prior express consent" is presented in the statute as an exception to the general prohibitions in 47 U.S.C. §227(b)(1)(A)(iii), and is therefore affirmative defense. *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948). The general rule is that a plaintiff need not plead responses to affirmative defenses in federal court.

Although it seemed possible that ICS would raise consent as a defense in response to plaintiff's Second Amended Complaint, this is not a valid reason to require pleading the response. Indeed, had ICS failed to raise "prior express consent" as an affirmative defense, there was a real chance that the defense could have been waived. *Matthews v. Wisconsin Energy Corp., Inc.*, 642 F.3d 565, 569-70 (7th Cir. 2011) (holding that defendant waived its affirmative defense, and rejecting argument that plaintiff should have pleaded facts that gave rise to affirmative defense because, "[plaintiff] was not obligated to forecast future events.")

In contrast, Illinois state court rules of civil procedure would have required plaintiff to file a reply to the "prior express consent" defense. 735 ILCS 5/2-602. There is no such rule in federal court.

The only mechanism of which counsel is aware in federal court that parties may use to compel the other side to disclose a response to an affirmative defense before summary judgment would be a well-drafted contention interrogatory. Fed.R.Civ.P. 33 and 26 permit parties to ask what facts and law support their adversaries' positions. Plaintiff issued such an interrogatory in this case to ICS, asking

about its consent defenses. ICS chose not to issue such an interrogatory to plaintiff. There was no duty on plaintiff's part to raise any response to any defense in this case until summary judgment.

    B. **The Prerecorded Message Calls to Plaintiff were Illegal, and therefore Nonconsensual.**

The three calls to plaintiff that used an autodialer *and* prerecorded voice were impermissible pursuant Minn.Stat. § 332.37(13), because ICS did not have a live operator on the line that asked for consent to use a prerecorded message as required by statute. There cannot have been consent for these three calls because they were illegal: consumers cannot waive statutory rights as a matter of public policy. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) (no prospective waiver of statutory rights allowed); *Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180-81 (11th Cir. 1982); *Buford v. American Fin. Co.*, 333 F. Supp. 1243, 1248 (N.D. Ga. 1971) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704 (1945); *Mills v. Home Equity Group, Inc.*, 871 F. Supp. 1482, 1486 (D.D.C. 1994).

Minn.Stat. §332.37(13) is a debt collector-specific statute, and would not have regulated any calls directly from PayPal to plaintiff. It does, however, regulate debt collection agency ICS's actions. No matter how explicit the contract between PayPal and plaintiff, the contract could not have rendered ICS' actions permissible. *McCauley v. Michael*, 256 N.W.2d 491, 498 (Minn.1977) (public policy does not permit contracts that are "contrary to the terms and policy of an express legislative enactment." In other words, consent was withdrawn by operation of law.

ICS' choice of law arguments, never raised before, do not help its cause. This case is different from the cases cited by defendant because plaintiff does not seek to sue, and does not seek damages, pursuant to Minn.Stat. 332.37(13). Instead, plaintiff cites the law as an express statutory prohibition against the precise conduct that happened within Minnesota's borders. ICS was not permitted to use an autodialer along with a prerecorded message unless it obtained the consent of the recipient

beforehand, during the call when the message is played. All of the illegal activity, pursuant to Minnesota law, happened in Minnesota. The calls were made from Minnesota, the prerecorded messages were played from Minnesota, and the failure to obtain the necessary consent happened in Minnesota. For at least two of the three phone calls, plaintiff did not even answer his phone. ICS Resp. Pl. Add'l Facts at 4. This goes the same for the other thirty-four calls for which there was no prerecorded message used: plaintiff did not answer them.[1] Thus, for all of ICS' calls but one, there was zero connection with Illinois at all. All of the illegal activity happened in Minnesota. This Minnesota located and licensed debt collection agency does not have the benefit of "choosing" whether or not Minnesota law applies to its actions within Minnesota.

Any presumption regarding whether this Minnesota law should be applied extraterritorially is rebutted by the enactment of nearby section 332.37(21), which expressly limits its reach to consumers within Minnesota. As ICS concedes in footnote 4, there is no conflict between Minn.Stat 332.37(13) and Illinois law. Again, plaintiff does not seek to sue under Minn.Stat. 332.37(13); instead he argues that this statute prohibited the calls ICS made in the first place, and therefore ICS could not have had consent to make them.

The Court should reconsider its previous ruling that plaintiff waived this argument, and enter summary judgment for plaintiff as to the three calls, made on August 18, 19 and 22, 2010, where ICS used both an autodialer and a prerecorded voice. See ICS Response to Plaintiff's SMF ¶ 3 & 4.[2]

   C. **Plaintiff Also Expressly Revoked any Consent to be Called**.

Plaintiff expressly revoked consent to receive autodialed and prerecorded message calls by sending PayPal, the creditor in this case, a letter stating such. Whether the Court permits the revocation

---

[1] Calls that are not answered are actionable. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009).
[2] If the Court finds a lack of evidence as to whether ICS' dialer falls within the prohibitions in Minn.Stat. 332.37(13), it should deny both parties' motions for summary judgment as to these three calls.

letter to be used in this litigation would be outcome determinative for twenty-three of the phone calls at issue.

Although the cases are split as to whether revocation must be in writing, every court to have considered the matter has held that a consumer may revoke consent to receive autodialed and prerecorded message calls. *Compare Sengenberger v. Credit Control Servs., Inc.*, 2010 WL 1791270, *4 (N.D. Ill. May 5, 2010) (holding that an FDCPA dispute letter revokes consent by operation of law); and *Gutierrez v. Barclays Group*, 2011 WL 579238, *4 (S.D.Cal. Feb.9, 2011) (holding that verbal revocation of consent to debt collection calls to a wireless number is sufficient under the TCPA) , with *Moore v. Firstsource Advantage, LLC*, 2011 WL 4345703 (W.D.N.Y. Sept. 15, 2011) (consent revocation must be in writing); *Starkey v. Firstsource Advantage, LLC*, Case No. 07–CV662A, 2010 WL 2541756, *6 (W.D.N.Y. Mar.11, 2010) (same); *Cunningham v. Credit Mgmt., L.P.*, 2010 WL 3791104, *5 (N.D.Tex. Aug.30, 2010) (same).

Of course, in this case revocation of consent (if there was any consent in the first place) was written. There is no question that, if the Court permits plaintiff to present the letter, that the outcome of the case for 23 calls would change. The United States Post Office return receipt indicates PayPal, ICS' client, received on August 21, 2010 at 7:23 am. Exhibit 2 to reconsideration motion. ICS called plaintiff 23 times using the regulated equipment after PayPal received this letter.

ICS' argument that plaintiff cannot "amend" the contract by revoking consent should be rejected. Corporations with high-priced lawyers that draft 37 page contracts of adhesion such as Exhibit A to ICS exhibit 3 on summary judgment not free to "contract away" statutory prohibitions that they do not like. Otherwise, all contracts of adhesion between businesses and consumers would contain clauses that exempt the defendant and its agents from any action brought pursuant to *any* consumer statute.

ICS' "plaintiff cannot amend the contract" argument is also contrary ICS' argument earlier in the case, which ultimately prevailed, that the FCC order "trumps" the contract, as to prior express consent.

Plaintiff's primary position on summary judgment was that the adhesion contract between him and ICS expressly permitted PayPal to call plaintiff as to that account, to the exclusion of debt collectors or other nonaffiliated entities.

In other words, the parties agreed that PayPal, only, would be permitted to use autodialer equipment to call plaintiff. ICS responded to that point by arguing that the FCC's order "trumped" the contractual language that permitted PayPal, only, to call, even though the agreement permitted only PayPal and its affiliates to call. This Court agreed with defendant on this point and ruled against plaintiff.[3] ICS should not be permitted to "mend the hold" now, and argue that the contract, rather than the FCC's order, controls. *Utica Mut. Ins. Co. v. Vigo Coal Co., Inc.*, 393 F.3d 707, 716 (7th Cir.2004).

### D. The Court Should Permit Plaintiff to Submit the Revocation Letter.

ICS' opposition brief is laced with innuendo that plaintiff intentionally withheld the revocation letter. Why would plaintiff hide a letter that would make them win? He would not, and plaintiff did not. Plaintiff had every reason to, and did, conduct several searches of his computer for relevant files, but did not find this one until after the ruling on summary judgment. Plaintiff has operating in good faith the entire time, and was diligent in trying to locate any and all materials relating to the case. He dug up and produced emails regarding the dispute with PayPal, and gave a deposition conducted by defense counsel, and the entire time was not reminded of the letter, until this Court's ruling on summary judgment.

There is no evidence that defendant's lawyers, or its client PayPal however (which would be jointly and severally liable for the violations), did not know about the letter. ICS did not, for example, mention this letter in responding to plaintiff's interrogatory number 4, which asked it to "Identify your defenses in this case, and identify all facts, documents, witnesses and legal authority you know of that

---

[3] Although plaintiff still believes this portion of the Court's order it to be incorrect, plaintiff saw no ground for reconsideration on this issue. This argument by plaintiff did not depend on whether the FCC rulings were binding, but ICS' in opposition did rely on such.

support or refute this position." Nor did it produce the document pursuant to document request 1, "All documents that mention or pertain to the plaintiff, Diego Frausto, phone number (224)595-7867, or symbol, number or other designation that is associated with plaintiff." Or document request 4, "All documents relating to any defense you have raised or intend to raise in this case." Every court to have considered the issue has decided that a debt collector has the duty to obtain information regarding "prior express consent" from its creditor clients. E.g. *Martin v. Bureau of Collection Recovery, Inc.*, 2011 WL 2311869 (June 13, 2011); *Donnelly v. NCO Fin. Sys.*, 263 F.R.D. 500 (N.D. Ill. 2009).

Indeed, ICS (or at least its attorneys) had intimate access to PayPal and its records, and jointly put together a detailed affidavit explaining the precise transaction and relationship between it and plaintiff in support of ICS' affirmative defense. ICS SMF 5, 9 through 32. Never once was the letter mentioned. PayPal has a lot to lose: it is also liable for ICS' illegal calls, and the FCC has held that PayPal is responsible for coming up with the evidence of consent – just as it did in this case:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications.
>
> Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent.
>
> Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules.
>
> Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Request of *ACA International for Clarification and Declaratory Ruling*, FCC 07-232, GC Docket No. 02-278, 23 FCC

Rcd. 559, available at 2008 WL 65485, at ¶ 10 (Dec. 28, 2007) (line breaks supplied). In sum, both parties technically had "access" to this letter, and neither party produced it.

Plaintiff realizes that his request to have this letter considered on summary judgment after the Court's decision is an up-hill battle. However, under these circumstances, where no reasonable person would withhold such a document, and the document was available to both parties, but not produced by either party, plaintiff therefore respectfully submits that the equities mitigate toward having the summary judgment motion decided with a full record, including the letter.

**CONCLUSION**

For the reasons herein, the Court should reconsider its ruling on summary judgment.

First, it should enter summary judgment for plaintiff as to the August 18, 19 and 22, 2010, calls, where ICS used both an autodialer and a prerecorded voice. ICS had no right to make these calls under Minn.Stat. 332.37(13), and therefore could not have had plaintiff's consent to receive them.

Second, it should permit plaintiff to submit the revocation of consent letter attached to plaintiff's motion for reconsideration as Exhibit 2, and hold that this letter effectively revoked consent as to any telephone calls initiated after August 25, 2009 at 7:23 am. ICS made twenty-three calls after revocation was perfected at that time.

Finally, the Court should hold that ICS used an "automatic telephone dialing system" for each of the calls to plaintiff's cell phone because ICS admitted that its predictive dialer falls within the binding definition of that term as promulgated by the Federal Communications Commission in its January 4, 2008 order. Plaintiff SMF ¶1.

                Respectfully submitted,

                /s/Alexander H. Burke

**BURKE LAW OFFICES, LLC**

155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com